PITTSBURGH & CONNEAUT DOCK COMPANY, APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as Pittsburgh & Conneaut Dock Co. *v.* Limbach (1985), 18 Ohio St. 3d 320.]

(No. 84-1864—Decided July 31, 1985.)

*Bricker & Eckler, Charles F. Glander* and *Rebecca C. Princehorn,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark A. Engel,* for appellee.

*Per Curiam.* Appellant claims that its purchases are excepted from Ohio sales and use taxes by R.C. 5739.01(E)(2) which excepts from the definition of "retail sales" and "sales at retail," sales of tangible personal property used "* * * directly in the rendition of a public utility service * * *."

R.C. 5739.01(Q)[1] provides:

" 'Used directly in the rendition of a public utility service' means that property which is to be incorporated into and will become a part of the consumer's production, transmission, transportation, or distribution system and which retains its classification as tangible personal property after such incorporation; fuel or power used in production, transmission, transportation, or distribution; and tangible personal property used in the repair and maintenance of the production, transmission, transportation, or distribution system, including only such motor vehicles as are specially designed and equipped for such use."

The Board of Tax Appeals determined that only a regulated public utility is entitled to exemption under R.C. 5739.01(E), and that appellant was not a public utility. Appellant challenges the board's determination in both regards.

First, appellant claims that it is a public utility regardless of the fact that it is not required to file its rates and charges with any regulatory commission. It relies on *Midwest Haulers, Inc.* v. *Glander* (1948), 150 Ohio St. 402 [38 O.O. 261], wherein a public utility was defined at 405:

"As its name indicates, the term 'public service,' implies a public use and service to the public, and the principal determinative characteristic of a public utility is that of service to, or readiness to serve, an indefinite public which has a legal right to demand and receive the utility's services or commodities. 43 American Jurisprudence, 571, Section 2.

"The transportation of goods by motor vehicle is a business which has been found so related to the public interest and welfare *as to require special regulation and control.* See Section 614-84 *et seq.,* General Code. When a company *is authorized* to act as a common carrier and holds itself out as willing to serve the general public, and in fact, does serve such public, it is engaged in rendering a public utility service within the contemplation of the sales and use tax laws. * * *" (Emphasis added.)

Appellant contends that this definition requires only a demonstration

---

[1] Now R.C. 5739.01(P), as renumbered effective August 1, 1982.

that it serves an indefinite public and that the public has a right to demand its services in order to be considered a "public utility." We disagree. The taxpayers in *Midwest Haulers were* subject to regulation. The definition relied upon by appellant made specific reference to the fact that the trucking industry was subject to special regulation and control and that authorization was required in order to act as a common carrier. Moreover, the "right to demand" appellant's services is not comparable to that of a utility. Except for contractual obligations into which it has voluntarily entered, appellant is free to cease doing business. Similarly, its right to engage in business is not conditioned upon prior approval by a regulatory agency.

Appellant contends that despite the fact that it is not regulated by the PUCO or ICC, sufficient regulation is shown by the fact that it is covered by the Railroad Retirement Act and that it voluntarily files its rate schedules with the ICC. Neither of these acts, however, has any bearing on whether appellant's activities are subject to regulation. Similarly, the determination by the IRS that appellant has met the "public purpose" requirement necessary to exempt the interest earned on Ohio industrial development bonds is irrelevant. The "public purpose" required for industrial development bonds is the promotion of private industry and not the conduct of regulated activity.

Second, appellant contends that it need not be a public utility in order to avail itself of the public utility exemption. Appellant relies on *Apex Powder Corp.* v. *Peck* (1954), 162 Ohio St. 189 [55 O.O. 95], and *State, ex rel. Paul Stutler, Inc.,* v. *Yacobucci* (1959), 169 Ohio St. 20 [7 O.O.2d 487]. These cases held that a consumer need not be a public utility in order to claim exemption of its property as "used in the rendition of a public utility service." However, these cases were decided before the enactment of R.C. 5739.01(Q) which specifically defines "used directly in the rendition of a public utility service" to mean "* * * that property which is to be incorporated into and will become a part of the *consumer's* production, transmission, transportation, or distribution system * * *." (Emphasis added.)

The cases cited by appellant specifically noted the absence of language comparable to that now contained in R.C. 5739.01(Q). In *Apex Powder Corp., supra* (which involved mining, as opposed to public utility services), at 191, the court noted, "[n]o words of the statute require that such sales must be by the 'consumer' whose 'purpose' is involved." Similarly, in *State, ex rel. Paul Stutler, Inc., supra,* the court noted at 26, that "[t]he statute does not say that the consumer must be a public utility." Thus, the rule of these cases is no longer valid in view of the enactment of R.C. 5739.01(Q).

Appellant is also not aided by its reliance on *Cincinnati Gas & Electric Co.* v. *Kosydar* (1974), 38 Ohio St. 2d 71 [67 O.O.2d 81], and *Cleveland Electric Illuminating Co.* v. *Lindley* (1982), 69 Ohio St. 2d 71. The tax-

payers in both of those cases were regulated utilities and the cases involved an interpretation of the word "directly" as opposed to the status of the consumer. In *Cleveland Electric Illuminating Co., supra,* the court held at 74:

"We agree with CEI's contention that the board's interpretation of *Cincinnati Gas & Electric* v. *Kosydar, supra,* is too narrow. The board unduly emphasized the fact that possible alternatives existed to CEI's leasing additional cars. Under *Cincinnati Gas & Electric, supra,* property may be 'essential' to the continuous production of the utility service even though the utility might theoretically have provided its service without having acquired the property at issue. The existence of a use tax exemption is not contingent upon the wisdom of a management decision to acquire certain property. Nor must a utility prove, in order to satisfy the essentiality test, that the continued production of its service was totally dependent upon the acquisition of the property. Under R.C. 5739.01(Q) it is enough that the property, *once acquired,* actually is incorporated into and used as part of a vital or essential step in the production process." (Emphasis added.)

Implicitly the court stated that the purchase or use of property necessary to the continuous operation of a utility is not tax exempt if it is provided by a non-utility, but is tax-exempt *once acquired by the public utility.* Appellant essentially seeks to obtain a tax exemption due to B&LE's status as a public utility. Appellant, however, may not obtain a vicarious tax exemption due to the tax-exempt status of its customers. *OCLC Online Computer Library Center, Inc.* v. *Kinney* (1984), 11 Ohio St. 3d 198, 200; *National Church Residences* v. *Lindley* (1985), 18 Ohio St. 3d 53, 58.

We affirm the Board of Tax Appeals' decision that appellant's purchases are not entitled to an exemption as being used directly in the rendition of a public utility service.[2]

Appellant also challenges the assessment of permissive county taxes and regional transit taxes. Ashtabula County, which is appellant's sole place of business, did not have a permissive tax or a regional transit tax for most of the audit period. Thus, any transactions deemed to have occurred at appellant's place of business are not subject to the permissive tax. The board accepted appellant's argument that contracts entered into by the bidding process were transactions occurring in Ashtabula County and not subject to permissive taxes. Thus, the board remanded the cause to the commissioner to determine which portions of the tax were attributable to contracts made by the bidding process and to deduct permissive and regional transit taxes on those items.

---

[2] In view of our holding on this issue, it is unnecessary to address appellant's challenges to the board's determinations that appellant had failed to show that certain items retained their classification as personal property, or that motor vehicles were "specially equipped" for use in utility repair.

Appellant claims that the rest of its sales were by purchase order initiated in Ashtabula County, and specifying that delivery occur in Ashtabula County. Thus, appellant contends that title and possession transferred in Ashtabula County. It is essentially appellant's contention that the place of delivery is the situs of the sale.

R.C. 5739.01(P)[3] provides:

" 'Making retail sales' means the effecting of transactions wherein one party is obligated to pay the price and the other party is obligated to transfer title to or possession of the item sold, but it does not include the delivery of items thereafter nor the preliminary acts of promoting or soliciting the retail sales * * *."

Thus, under R.C. 5739.01(P), the place of delivery would only be the situs of the sale if it were established that the parties' obligations were fixed only upon delivery. The board found that the purchase orders did not specify any terms or conditions of the sale which would indicate that the obligations of the parties arose only when the goods were delivered. Thus, the board held that the sales occurred at the seller's place of business.

The board's finding is supported by the record and is thus not unreasonable or unlawful.

In its final proposition of law, appellant argues that it was denied equal protection of the laws and due process of law by unlawfully being denied tax exemption. Appellant makes no separately cognizable constitutional claim, but states generally that if its allegations of an erroneous tax determination are true, then that amounts to a constitutional claim that it was singled out for disproportionate tax treatment. This argument is without merit.

Accordingly, we affirm the decision of the Board of Tax Appeals.

*Decision affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES and DOUGLAS, JJ., concur.

C. BROWN and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. The majority opinion undermines the well-established and well-reasoned law of this state regarding the taxation of those entities which render a "public utility service" pursuant to R.C. 5739.01(E) and (Q).

Over a quarter of a century ago, this court established in *Apex Powder Corp.* v. *Peck* (1954), 162 Ohio St. 189 [55 O.O. 95], that it is the nature of the *use* of the property at issue and not the *status* of the one using it that is determinative of the applicability of the sales and use tax exemption.

---

[3] Now R.C. 5739.01(O), as renumbered effective August 1, 1982.

Accordingly, an entity need not be a public utility to qualify for the exemption so long as it *uses* the property in the rendition of a public utility service. This holding was reaffirmed in *State, ex rel. Paul Stutler, Inc.,* v. *Yacobucci* (1959), 169 Ohio St. 20 [7 O.O.2d 487].

The majority asserts that the *Apex* and *Stutler* cases are no longer controlling in light of the 1967 enactment of R.C. 5739.01(Q). While I agree with the majority that subsection (Q) serves to further explain those requisites necessary to the application of the tax exemption, I do not believe this section legislatively overrules the *Apex* and *Stutler* cases. Because subsection (Q) was enacted years after our decisions in *Apex* and *Stutler,* I am certainly not satisfied that it was meant to obviate or even diminish the viability of these cases. Moreover, this statutory provision, by its own language, does not limit the tax exemption solely to public utilities. To the contrary, subsection (Q) states that the exemption may be available to those entities which use the property at issue " 'directly in the rendition of a *public utility service*' * * *." Had the legislature intended to limit the exception only to public utilities, I believe it would have said so.

It is clear that the property and dock services provided by the Pittsburgh & Conneaut Dock Co. were *directly* related and critical to the operations of a public utility service provided by the Bessemer & Lake Erie Railroad. As such, the decision of the Board of Tax Appeals denying appellant the opportunity to avail itself of the sales and use tax exemption is unreasonable, is opposed to sound precedent promulgated by this court, and in my view is contrary to the public policy considerations discussed in *Apex* and *Stutler.* Thus, I must respectfully dissent.

C. Brown, J., concurs in the foregoing dissenting opinion.