MANFREDI MOTOR TRANSIT CO., APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as Manfredi Motor Transit Co. *v.* Limbach (1988), 35 Ohio St. 3d 73.]

(No. 86-1334—Decided February 3, 1988.)

*Thompson, Hine & Flory, Paul W. Brown, Stephen L. Buescher* and *Kent L. Mann,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Richard C. Farrin,* for appellee.

*Per Curiam.* In its first proposition of law, appellant challenges the finding of the BTA that appellant was not engaged primarily in rendering a public utility service. The BTA determined that the purchases of items used interchangeably in appellant's public utility service and its non-public utility service were not entitled to an exception. Appellant argues that it was engaged primarily in rendering a public utility service, and that all its purchases of equipment were used or consumed in the rendition of that public utility service and were thus excepted.

The appellant and the BTA misread the statute, R.C. 5739.01(E)(2), which provides for the tax exception, and our decisions which have considered it. The BTA is to determine, first, if the appellant is rendering a public utility service, and, second, whether the items purchased were used directly in the rendition of that public utility service.

Exception from the sales tax pursuant to R.C. 5739.01(E)(2) is provided for items purchased for use or consumption directly in the rendition of a public utility service:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"* * *

"(2) * * * to use or consume the thing transferred * * * directly in the rendition of a public utility service * * *."

For the audit period under review, the phrase "used directly in the rendition of a public utility service" was found in R.C. 5739.01(Q) (now [P]) as follows:

" 'Used directly in the rendition of a public utility service' means that property which is to be incorporated into and will become a part of the consumer's production, transmission, transportation, or distribution system and which retains its classification as tangible personal property after such incorporation; fuel or power used in the production, transmission, transportation, or distribution; and tangible personal property used in the repair and maintenance of the production, transmission, transportation, or distribution system, including only such motor vehicles as are specially designed and equipped for such use."[1]

In *Midwest Haulers, Inc.* v. *Glander* (1948), 150 Ohio St. 402, 38 O.O. 261, 83 N.E. 2d 53, this court considered the situation where a motor carrier, which had authority to act as a common carrier for the entire audit period, operated as a common carrier only for the second portion of the audit period. It had operated solely as a contract carrier in the first portion of the audit period. We affirmed the decision of the BTA that the taxpayer did not render a public utility service in the first portion of the audit period when it

---

[1] A concomitant use tax exception is provided by R.C. 5741.02(C)(2).

acted as a contract carrier, and the tax was found to be properly assessed. When it operated as a common carrier in the later portion of the audit period, it was rendering a public utility service, the purchases it made were used directly in the rendition of such public utility service, and we affirmed the exception of these purchases from the sales tax. We held that authorization to act as a common carrier is, by itself, insufficient grounds for a taxpayer to take advantage of the exception, but that the "actual operation of a business determines its legal status, and, although Midwest and Mutual were authorized to act as common carriers, they did not in fact so operate but instead acted as contract carriers." *Id.* at 406, 38 O.O. at 263, 83 N.E. 2d at 55.

The actual operation of the business determines whether it is or is not rendering a public utility service. In *Midwest Haulers,* the taxpayer was entitled to take advantage of the sales tax exception for purchases made by it for direct use in rendering a public utility service, only when it actually operated as a common carrier, rendering such service.

Later, in *A.J. Weigand, Inc.* v. *Bowers* (1960), 171 Ohio St. 78, 12 O.O. 2d 90, 167 N.E. 2d 772, we considered a sales and use tax assessment against a motor carrier which, during the audit period, was engaged both as a common carrier and as a contract carrier. The purchased items under review were all used in furnishing the motor carrier service, and were used interchangeably for both operations. The taxpayer derived the greater part of its revenue from such operations from those services it rendered as a contract carrier. Further, the equipment traversed a greater number of miles in the taxpayer's operation as a contract carrier, rather than as a common carrier. The

BTA found that the appellant was principally engaged in operating as a contract carrier and not entitled to exception for the sales tax for these purchases. We affirmed the BTA, agreeing that the principal and primary use to which the purchased property was put was in the taxpayer's operation as a contract carrier, a non-excepted use. This court cited as support *Mead Corp.* v. *Glander* (1950), 153 Ohio St. 539, 42 O.O. 24, 93 N.E. 2d 19, which first set forth the primary use test for application to sales and use tax exceptions.

Thus, where a taxpayer was engaged in an operation which would provide an exception for its purchase of equipment and also in an operation which would require the levy of the tax, the primary and principal use of the property in question was determinative of the availability of the exception. In *Weigand,* consideration of the two operations was important only as it bore upon the use of the equipment for which exception was sought. We approved the consideration of the ratio of revenue and the ratio of miles only to determine if the equipment was used more in an excepted versus a non-excepted way. A public utility service was rendered by the taxpayer in *Weigand.* The question there was whether the use of the equipment was primarily in the taxpayer's operation as public utility service or as a contract carrier.

The BTA places great reliance upon *Pittsburgh & Conneaut Dock Co.* v. *Limbach* (1985), 18 Ohio St. 3d 320, 18 OBR 365, 481 N.E. 2d 579. There, this court considered the operation of a taxpayer which was not regulated by the Public Utilities Commission or the Interstate Commerce Commission, but which voluntarily filed rates and charges with the Interstate Commerce Commission. It claimed that it served an indefinite public, that the public had a right to demand its services, and that

it should be considered a "public utility." We disagreed and distinguished *Midwest Haulers* as a case where the taxpayer was subject to regulation. We held that only a regulated public utility service could take advantage of this exception. Pittsburgh & Conneaut Dock Co. had no authority to operate as a public utility whatsoever, and the taxing authorities did not have to consider its purchases made in conjunction with its claim to exception for them by reason of its rendering a public utility service.

This court has not held, as the BTA did in the instant matter, that a determination need be made that a taxpayer was primarily and principally engaged in rendering a public utility service before any of its purchases could even be considered to be excepted. The first question to be answered is whether the taxpayer is a regulated public utility service, as stated in *Pittsburgh & Conneaut Dock Co.* v. *Limbach, supra,* and, then, the question becomes whether it was rendering a public utility service when the purchases were made, in accord with *Midwest Haulers, Inc.* v. *Glander, supra.* If these first two questions are answered in the affirmative, then we look to whether the item purchased was used directly in rendering the public utility service. If the answer is "yes," the purchase of the item is excepted from the tax; if the answer is "no," the tax must be paid. If the item is used in a manner which would provide exception from the tax and in another manner which would not provide an exception from the tax, the primary use test is applied. Scrutiny under this test may involve a review of the various aspects of the business of the taxpayer, pursuant to *A.J. Weigand, Inc.* v. *Bowers, supra.*

Whether appellant was, as the BTA decided, primarily and principally engaged in rendering a public utility service is not the question. The BTA should have found that the taxpayer was a regulated public utility service because this was stipulated by the parties, and the appellee so found when she deleted the purchases of certain items from the assessment. Upon making this finding, the BTA then should have considered the use of the purchased items in appellant's business, relative to whether they were used directly in the rendition of a public utility service. This would necessarily require a review of the entire operation of the appellant, including its operation as an unregulated carrier. See *Midwest Haulers* and *Weigand, supra.*

As it was unlawful for the BTA to fail to consider the primary and principal use of the purchased items, the decision of the BTA is reversed and the cause is remanded for it to examine exception for the purchased items in light of this decision and *Ace Steel Baling, Inc.* v. *Porterfield* (1969), 19 Ohio St. 2d 137, 48 O.O. 2d 169, 249 N.E. 2d 892.

The appellant also seeks reversal because the BTA did not consider excepting from the tax a portion of the total purchases made by it. It argues that the BTA should have excepted twenty-three percent of its equipment purchases, which is the ratio of its common carrier miles to its total miles, apportioning the purchased equipment into excepted and non-excepted uses. Since the decision of the BTA may be the same after remand, we also consider this argument.

An appeal to the BTA is provided by statute, and the statute must be strictly followed. *Lenart* v. *Lindley* (1980), 61 Ohio St. 2d 110, 15 O.O. 3d 152, 399 N.E. 2d 1222. R.C. 5717.02 provides that the notice of appeal to

the BTA from the Tax Commissioner shall "* * * specify the errors therein complained of * * *."

The BTA found that there was no specification of this asserted error and did not consider it. An understanding of what the appellant asked the BTA to do in response to its argument is necessary for our review of whether this error was specified. We can find only subparagraph (a) of its notice of appeal as listing any cognizable error,[2] which reads as follows:

"The Tax Commissioner erroneously determined that Appellant was not primarily a common carrier engaged in the rendition of a public utility service for which the involved purchases were used."

In this alternative argument, the appellant does not ask for the application of the primary use test; it asks for the application of the "direct payment permit" provision found in R.C. 5739.031. As we stated in *B.F. Goodrich Co.* v. *Lindley* (1979), 58 Ohio St. 2d 364, 12 O.O. 3d 325, 390 N.E. 2d 330, the apportionment of the sales tax applies only in those situations where, at the time of purchase, it is unknown whether a quantity of an item, usually a fungible, will be used in an excepted manner or a non-excepted manner. The primary use test was found inapplicable to except the entire purchase.

When the primary use test was created in *Mead Corp.* v. *Glander, supra,* this court stated the following:

"Moreover, this court has said in effect that there is no authority for the splitting of a piece of property owned by one person for the purpose of taxation, so that one part will be exempt from taxation and the other part nonexempt. *Welfare Federation of Cleveland* v. *Glander, Tax Commr.,* 146 Ohio St., 146, 177, 64 (N.E. 2d), 813, 826." 153 Ohio St. at 544, 42 O.O. at 27, 93 N.E. 2d at 21.

The primary use test applies to the exception of an item which is used or consumed in the excepted way; it does not apply to the instance where a material, such as a fungible, is purchased and, at the time of purchase, the quantity's exact use is undetermined. A direct pay permit issued by the commissioner allows the taxpayer, at the time of purchase, to pay the tax based upon a predetermined ratio of excepted to non-excepted usage.

The appellant is asking for something more than the application of the primary use test, which was specified in its notice of appeal. It argues that, if the primary use test cannot be applied, the sales tax upon the purchases of these items should be apportioned based upon the use of the item in the excepted way and the non-excepted way. Appellant's apportionment theory is distinct from the primary use test, and the language in the notice of appeal pertains only to operation primarily as a common carrier engaged in the rendition of a public utility service. As the rejection of this apportionment theory was the basis for the creation of the primary use test (*Mead Corp.* v. *Glander, supra*), intent to rely on that theory should have been specifically so stated in appellant's notice of appeal. The BTA was correct in refusing to consider this alleged error.

For the reasons stated, the decision of the BTA is reversed and the cause is remanded for reconsideration

---

[2] Subparagraphs (b) and (c) are so general in nature that they do not specify any error. *Queen City Valves, Inc.* v. *Peck* (1954), 161 Ohio St. 579, 53 O.O. 430, 120 N.E. 2d 310, and *Ladas* v. *Peck* (1954), 162 Ohio St. 159, 54 O.O. 397, 122 N.E. 2d 12.

of the primary and principal use of the items under consideration.

*Decision reversed and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, WRIGHT and H. BROWN, JJ., concur.

DOUGLAS, J., dissents.