INLAND REFUSE TRANSFER COMPANY, APPELLEE, *v.* LIMBACH, TAX COMMR., APPELLANT.

[Cite as Inland Refuse Transfer Co. *v.* Limbach (1990), 53 Ohio St. 3d 10.]

(No. 89-1974—Submitted June 6, 1990—Decided August 1, 1990.)

*Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A., John R. Climaco, Thomas L. Colaluca* and *John Swansinger,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *James C. Sauer,* for appellant.

*Per Curiam.* R.C. 5739.01(E)(2) excepts from the sales tax (and R.C. 5741.02[C][2] correspondingly excepts from the use tax) purchases of items used "* * * directly in the rendition of a public utility service * * *."

In *Manfredi Motor Transit Co.* v. *Limbach* (1988), 35 Ohio St. 3d 73, 76, 518 N.E. 2d 936, 939, we set forth the conditions necessary to meet the public utility exception. First, the taxpayer must be a regulated public utility. Second, it must render a public utility service when the items are purchased. Third, it must use the items directly in rendering the public utility service.

In this case, the commissioner argues that neither the Cleveland ordinances nor the Ohio statutes regulate Inland as a public utility.

Moreover, she objects to the BTA's remand to clarify what purchases were used directly in rendering the public utility service. She maintains that Inland had the burden to establish this before the BTA and that it failed to do so.

Inland, however, maintains that both Cleveland and Ohio regulate it. According to Inland, Cleveland requires it to collect and dispose of solid waste at least weekly, obtain licenses for its vehicles, pay waste hauling fees, collect rubbish only at certain hours, clean its vehicles at least once a week, maintain vehicle logs, use city transfer sites, and suffer the prospect of having its vehicles impounded for any failures in these conditions. Inland also argues that Ohio regulates it by providing for the formation of county and regional solid waste management authorities.

In *Pittsburgh & Conneaut Dock Co.* v. *Limbach* (1985), 18 Ohio St. 3d 320, 18 OBR 365, 481 N.E. 2d 579, the taxpayer sought relief under the public utility exception. It was not regulated by the Public Utilities Commission of Ohio or the Interstate Commerce Commission, even though it operated a dock to store and transfer in-transit coal owned by a sister corporation and others, and a dock to store and transfer iron ore and limestone owned by its parent corporation, United States Steel Corporation, and other steel companies. The taxpayer voluntarily filed its rates and charges with the ICC.

We rejected that taxpayer's argument that it did not need to be a regulated public utility to have its purchases excepted. We stated that only a public utility service that is so important to the public interest that special regulation and control has been imposed upon it may have its purchases excepted. Since the taxpayer was not so regulated, it could, except

for voluntarily undertaken contractual obligations, cease doing business. The public then could not demand and receive the taxpayer's service as the public could if the taxpayer were specially regulated. Thus, the required regulation equates to control of the taxpayer's business.

We held, moreover, in *Trans World Airlines* v. *Porterfield* (1970), 22 Ohio St. 2d 177, 51 O.O. 2d 238, 258 N.E. 2d 458, that regulation by the Public Utilities Commission or a corresponding federal agency would satisfy this regulation requirement. We find nothing in R.C. 5739.01(E)(2) or our decisions that would withhold satisfaction of this requirement if a municipality performed this regulation. However, without deciding whether Inland is a public utility, we hold that Cleveland does not regulate Inland. Rather, Cleveland simply polices it.

As an example of the requisite control, under R.C. 4921.04, which might arguably apply to Inland, the Public Utilities Commission has power over motor transportation companies to, *inter alia,* fix rates, regulate service and safety of operations, and regulate the relationship between these companies and the public "* * * to the exclusion of all local authorities * * *." Under R.C. 4921.07, these companies may not operate unless they have secured a certificate of convenience and necessity from the commission. And, the commission designates the routes over which the company may operate. R.C. 4921.10.

Here, however, Inland voluntarily enters into agreements with municipalities to haul rubbish to disposal sites. It may cease business without the prior approval of any regulatory agency. Cleveland's policing of Inland's operations extends only to the condition of its trucks, the collection of hauling fees, and the restriction of the hours in which it may do business. Cleveland does not control the rates that Inland charges, other than negotiating a contract rate for itself, and Cleveland does not restrict the territory in which Inland may operate. Thus, the regulation called for in *Pittsburgh & Conneaut Dock Co.* does not apply here.

Furthermore, the Ohio statutes cited by Inland pertain to establishing county garbage and refuse disposal districts and establishing a regional solid waste management advisory council. These statutes allow for the development of plans to handle and dispose of garbage and solid waste. The result of these legislative initiatives is to police this industry, not to regulate it in the sense that the Public Utilities Commission controls public utilities.

Finally, as to the BTA's inability to determine what items were used directly in rendering the public utility service and its consequent remand to the commissioner, we hold that Inland failed to sustain its burden of proof. As the commissioner argues, Inland had the burden to show the manner and extent of her error. *Midwest Transfer Co.* v. *Porterfield* (1968), 13 Ohio St. 2d 138, 42 O.O. 2d 365, 235 N.E. 2d 511, and *Federated Dept. Stores, Inc.* v. *Lindley* (1983), 5 Ohio St. 3d 213, 215, 5 OBR 455, 457, 450 N.E. 2d 687, 688. Thus, Inland should have established before the BTA what items were used directly in rendering the public utility service; consequently, the BTA erred when it remanded the case to the commissioner for this determination.

Accordingly, we reverse the decision of the BTA since it is neither reasonable nor lawful.

*Decision reversed.*

MOYER, C.J., SWEENEY, HOLMES,

WRIGHT, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., dissents.

DOUGLAS, J., dissenting. I agree with the BTA. The "common carrier" issue was *not* decided by the BTA and it is not now before us. I would affirm the BTA.