R.K.E. TRUCKING, INC., APPELLANT, v. ZAINO, TAX COMMR., APPELLEE.

[Cite as *R.K.E. Trucking, Inc. v. Zaino,*
98 Ohio St.3d 495, 2003-Ohio-2149.]

(No. 2002–1048—Submitted February 26, 2003—Decided May 7, 2003.)

O'CONNOR, J.

{¶ 1} Appellant, R.K.E. Trucking, Inc. ("RKE"), contends that its purchases of trucks and parts and services for those trucks are exempt from sales and use taxes because RKE holds a state-issued certificate under which it engaged in transportation of tangible personal property belonging to others for consideration. We disagree.

{¶ 2} After an audit, RKE was assessed sales and use taxes on its purchases of trucks and parts and services for those trucks for the time period February 22, 1994, through June 30, 1996. RKE paid the assessed amount and applied for a refund.

{¶ 3} On February 22, 1994, RKE received a temporary permit to operate as a contract motor carrier from the Public Utilities Commission of Ohio ("PUCO") to haul for a single customer. In June 1994, RKE received a permanent permit to serve that single customer. In July 1995, after the PUCO recognized deregulation of the trucking industry, RKE was issued a certificate by the PUCO allowing it to serve any customer statewide.

{¶ 4} After receiving its permit, RKE used its trucks to haul materials such as dirt and gravel to and from its customers' construction sites. RKE charged its customers a fee for hauling the customers' materials. RKE also used its trucks to haul materials that it purchased and resold. When RKE purchased and resold gravel or other materials, it delivered those materials to its customers for a single charge that included both the material and trucking charges. RKE used its trucks interchangeably for hauling materials of its customers and for hauling materials that it purchased and resold to its customers.

{¶ 5} At the hearing before the Board of Tax Appeals ("BTA"), RKE's president was asked whether RKE had records to establish what percentage of a truck's use had been for hauling RKE's materials and what percentage for hauling customers' materials. He responded that RKE had no records in that form but suggested that the information could be extracted from daily job records for each truck. When asked whether the Tax Commissioner's agent had requested RKE to establish those percentages, the witness responded, "I'm sure it came up." Later, the witness stated that it would have been "an immense amount of work and I don't think we ever did it, and that's why we agreed to this audit." When asked to compare the revenue RKE received from the sales of gravel and other construction materials to the revenue received from hauling property of others, the witness responded that for the time period in question the revenues were similar.

{¶ 6} Both the Tax Commissioner and the BTA denied RKE's application for refund because RKE could not show that the primary use of its trucks was for hauling tangible personal property belonging to others for consideration.

{¶ 7} Although both sales and use taxes are involved in this case, only the sales tax exemption will be discussed because R.C. 5741.02(C)(2) exempts from the use tax personal property or services that would not be subject to the sales tax if acquired in Ohio.

{¶ 8} RKE claims exemption from sales tax for its purchases of trucks and parts and services for those trucks under what is now R.C. 5739.02(B)(32) (originally enacted as R.C. 5739.02[B][33], Am.H.B. No. 335, 141 Ohio Laws, Part II, 3278, 3292, effective December 11, 1985), which provides:

{¶ 9} "(B) The tax does not apply to the following:

{¶ 10} "* * *

{¶ 11} "(32) The sale, lease, repair, and maintenance of, parts for, or items attached to or incorporated in, motor vehicles that are primarily used for transporting tangible personal property by a person engaged in highway transportation for hire[.]"

{¶ 12} The term "highway transportation for hire" used in R.C. 5739.02(B)(32) is defined in R.C. 5739.01(Z):

{¶ 13} "As used in this chapter:

{¶ 14} "* * *

{¶ 15} "(Z) 'Highway transportation for hire' means the transportation of personal property belonging to others for consideration by any of the following:

{¶ 16} "(1) The holder of a permit or certificate issued by this state or the United States authorizing the holder to engage in transportation of personal

property belonging to others for consideration over or on highways, roadways, streets, or any similar public thoroughfare[.]"

{¶ 17}   RKE contends that the foregoing statutes should be read so that the purchase of a truck and parts and services for that truck is exempt if the truck is used primarily to transport tangible personal property and is used by a person engaged in highway transportation for hire, even if the particular truck itself is not so used.   RKE reaches this result by finding that the word "primarily" relates only to "transporting tangible personal property" and does not relate to "highway transportation for hire."   On the other hand, the Tax Commissioner contends that the exemption applies only to those motor vehicles used primarily for transporting personal property for hire.

{¶ 18}   Prior to the enactment in 1985 of what is now R.C. 5739.02(B)(32) and R.C. 5739.01(Z) by Am.H.B. No. 335, common carriers could except purchases under R.C. 5739.01(E)(2) and G.C. 5546–1, which provided an exception from sales tax when the purpose of the consumer was "to use or consume the thing transferred * * * directly in the rendition of a public utility service."

{¶ 19}   An understanding of the significance of the language the General Assembly used in R.C. 5739.02(B)(32) can be gained from those cases that allowed common carriers the exception from taxation for vehicles used "directly in the rendition of a public utility service" prior to the enactment of R.C. 5739.02(B)(32). In *Midwest Haulers, Inc. v. Glander* (1948), 150 Ohio St. 402, 406, 38 O.O. 261, 83 N.E.2d 53, the motor carrier held a permit to act as a common carrier for hire throughout the entire audit period, but it actually operated as a common carrier for only part of the audit period.   The court granted Midwest's claim for exception from taxation only for the time period when it was operating as a common carrier, stating, "The authorization to act as a common carrier does not in and of itself conclusively establish that there is such operation.   The actual operation of a business determines its legal status * * *."

{¶ 20}   In *A.J. Weigand, Inc. v. Bowers* (1960), 171 Ohio St. 78, 12 O.O.2d 90, 167 N.E.2d 772, a sales and use tax assessment was made against a motor carrier that used its equipment both in its common-carrier and in its contract-carrier operations.   The greater portion of the revenue and the greater number of miles traveled resulted from the contract-carrier operation.   The court denied the exception, stating, "At no time during the audit period did appellant *operate exclusively or primarily as a common carrier*.   The primary use to which the purchased property is put is determinative."   (Emphasis added.)   Id. at 79, 12 O.O.2d 90, 167 N.E.2d 772.

{¶ 21}   In *Manfredi Motor Transit Co. v. Limbach* (1988), 35 Ohio St.3d 73, 518 N.E.2d 936, the motor carrier operated both as a regulated common carrier and as a contract carrier.   In addition, it hauled liquid waste without any specific

regulation. Manfredi contended that it was engaged primarily in rendering a public utility service and that all its purchases should be excepted. The court disagreed with Manfredi, finding that the first questions to be answered were whether the taxpayer was a regulated public utility and then whether it was rendering a public utility service when the purchases were made. If the answers were yes, the court then looked "to whether the item purchased was used directly in rendering the public utility service." Id. at 76, 518 N.E.2d 936. However, "[i]f the item is used in a manner which would provide exception from the tax and in another manner which would not provide an exception from the tax, *the primary use test is applied.*" (Emphasis added.) Id.

{¶ 22} From these decisions, three criteria were developed to determine whether purchases of motor vehicles and parts and services for those motor vehicles were excepted from taxation as used directly in the rendition of a public utility service: (1) the purchaser must be a common carrier, (2) the purchaser must actually be operating as a common carrier, and (3) the primary-use test is to be applied if the property is used both in a way that would make it eligible for the exception and in a way that would not make it eligible.

{¶ 23} At the same time that R.C. 5739.02(B)(32) was added by Am.H.B. No. 335, the definition of the term "[u]sed directly in the rendition of a public utility service" contained in R.C. 5739.01(P) was amended to provide that transportation for hire no longer qualified as a public utility service. 141 Ohio Laws, Part II, 3284.

{¶ 24} There is no indication that by enacting R.C. 5739.02(B)(32) in Am.H.B. No. 335 the General Assembly intended to do anything more than move the exception for motor vehicles for hire previously contained in the public utility section to a separately stated exemption. There is no indication that the limitations on the public utility exception for motor carriers developed by case law prior to Am.H.B. No. 335 were meant to be changed by R.C. 5739.02(B)(32). The language in R.C. 5739.02(B)(32) has retained the concepts that were developed for application of the exemption under the prior public utility exception. The requirement of R.C. 5739.02(B)(32) that a person be engaged in highway transportation for hire comes from *Midwest Haulers, Inc. v. Glander,* supra. The requirement that the property be primarily used in highway transportation for hire comes from both *A.J. Weigand, Inc. v. Bowers* and *Manfredi Motor Transit Co. v. Limbach,* supra.

{¶ 25} Although not controlling, the Legislative Service Commission's analysis of Am.H.B. No. 335 bolsters the conclusion that Am.H.B. No. 335 was not meant to change the prior requirements for exempting property used for transportation for hire: "The act also exempts from sales taxes, the sale, lease, repair, and maintenance of motor vehicles, parts for motor vehicles, or items

attached or incorporated into motor vehicles, *provided the vehicles are primarily used for the transportation of personal property belonging to others for consideration* by any of the following persons: (1) the holder of a permit or certificate issued by this state or the United States authorizing the holder to engage in transportation of personal property belonging to others for consideration * * *." (Emphasis added.) Ohio Legislative Service Commission, Summary of Enactments, August–December 1985, at 55–57.

{¶ 26} When an assessment is contested, the taxpayer has the burden to show in what manner the assessment was faulty. *Federated Dept. Stores, Inc. v. Lindley* (1983), 5 Ohio St.3d 213, 215, 5 OBR 455, 450 N.E.2d 687. "The Tax Commissioner's findings are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful." *Hatchadorian v. Lindley* (1986), 21 Ohio St.3d 66, 69, 21 OBR 365, 488 N.E.2d 145.

{¶ 27} The exemption in R.C. 5739.02(B)(32) is granted for the sale of motor vehicles and associated parts and services that are primarily used to transport tangible personal property of others for consideration. Thus, the statute recognizes that the motor vehicles can be used either for transportation of property for hire or for transportation that is not for hire. To be exempt, the motor vehicle must be primarily used for the transportation of tangible personal property of others for consideration. To show that a motor vehicle is primarily used for the transportation of tangible personal property of others for consideration, there must be proof of that use. The burden was on RKE to prove that its trucks were primarily used for transportation of personal property of others for consideration. However, RKE presented no evidence to demonstrate the primary use of its trucks. Without such proof there can be no exemption.

{¶ 28} Therefore, we find the decision of the BTA to be reasonable and lawful, and we affirm it.

Decision affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, VUKOVICH and LUNDBERG STRATTON, JJ., concur.

JOSEPH J. VUKOVICH, J., of the Seventh Appellate District, sitting for COOK, J.

———————

Sanborn, Brandon, Duvall & Bobbitt Co., L.P.A., James Duvall and L. Christopher Bobbitt, for appellant.

Jim Petro, Attorney General, and Richard C. Farrin, Assistant Attorney General, for appellee.