PARISI TRANSPORTATION COMPANY, APPELLANT,
*v.* WILKINS, TAX COMMR., APPELLEE.

[Cite as *Parisi Transp. Co. v. Wilkins,*
102 Ohio St.3d 278, 2004-Ohio-2952.]

(No. 2002–2221—Submitted March 16, 2004—Decided June 23, 2004.)

O'CONNOR, J.

{¶ 1} We are asked to consider whether refrigeration units built into semitrailers are subject to an ad valorem personal property tax. For the following reasons, we hold that they are not.

{¶ 2} Parisi Transportation Company ("Parisi") purchased refrigerated semitrailers, specially built by semitrailer manufacturers and purchased as completed units. The sides, roofs, and bottoms of the refrigerated semitrailers are insulated during their manufacture. The refrigeration units, which each weigh between 1,650 and 2,000 pounds, have their own fuel supply and battery installed in the semitrailer. Although the refrigeration units can theoretically be removed, they are not used for any purpose other than refrigerating the semitrailers. Parisi uses the refrigerated semitrailers to transport perishable foods to customers in Ohio and eight other states.

{¶ 3} The Tax Commissioner issued amended preliminary personal property assessments against Parisi for the tax years 1994 and 1995 for the value of the refrigeration units built into Parisi's refrigerated semitrailers. Parisi appealed the assessments. After a hearing, the Tax Commissioner affirmed his assessments, finding that the refrigeration units were not inherently motor vehicle equipment. Parisi appealed to the Board of Tax Appeals ("BTA"). The BTA affirmed the Tax Commissioner's decision, finding that the refrigeration units served a special purpose unrelated to the use of the semitrailers. This cause is now before this court as an appeal of right.

{¶ 4} A personal property tax is imposed on all personal property located and used in business in this state, unless excepted or exempted. R.C. 5709.01(B)(1). The definition of "personal property" set forth in R.C. 5701.03(A) provides, " 'Personal property' does not include * * * motor vehicles registered by the owner thereof * * *."

{¶ 5} One of the earliest cases to address whether certain equipment should be considered separate personal property or an inherent part of a motor vehicle was decided by the Montgomery County Common Pleas Court in *State ex rel. Tejan v. Lutz* (1934), 31 Ohio N.P. (N.S.) 473, 1934 WL 1918. While *Tejan* involved a licensing tax based on the weight of a fully equipped motor vehicle, the same reasoning is applicable to the tax question posed in this case. After quoting definitions for "vehicle," "motor vehicle," and "commercial car," the *Tejan* court stated:

{¶ 6} "These statutory definitions obviously exclude the conception that an object placed upon the truck *ipso facto* necessarily becomes a part of the truck. Such material or object must, in fact, become an inherent part of the truck, as such, and by such placement, purpose and use as to effectuate the contemplated end-result of motor vehicle transportation, that is, to carry merchandise or freight. If such addition to the truck chassis be a cab or body, it instantly becomes a part of the vehicle, and serves the purpose of promoting transportation of the load. But when equipment, apparatus, or machinery does not assist in effectuating the purposes of a motor vehicle, but serves other purposes not inherently characteristic of a motor vehicle nor related to its operative mechanism or operative purposes, it is clearly not subject to taxation under the motor vehicle license tax law. It is, in brief, personal property of a different legal classification, subject to the appropriate *ad valorem* tax requirements." Id., 31 Ohio N.P. (N.S.) at 511.

{¶ 7} The concepts set forth in *Tejan* were adopted by the General Assembly in 1939 when it amended what is now R.C. 4503.08(A). The amendment provided that, when determining the weight of motor vehicles for registration purposes, "the weight of any machinery mounted upon or affixed to a motor vehicle and which is not inherently motor vehicle equipment shall not be included in the determination of the total weight." (Emphasis added.) H.B. No. 94, 118 Ohio Laws 68, amending G.C. 6293.

{¶ 8} The Tax Commissioner concedes that Parisi's semitrailers are not subject to personal property tax because they are registered as motor vehicles. He contends, however, that the refrigeration units are subject to personal property tax because they do not serve the inherent motor vehicle function of carrying a load, i.e., propelling a vehicle and holding or containing cargo. Instead, the refrigeration units serve merely to facilitate the business by preserving the cargo. Parisi contends that its refrigeration units are an inherent part of the refrigerated semitrailers and, therefore, are exempt from personal property tax.

{¶ 9} This court considered a similar situation in *Taxicabs of Cincinnati, Inc. v. Peck* (1954), 161 Ohio St. 508, 53 O.O. 378, 120 N.E.2d 86, where the issue was whether taximeters and two-way radios installed in taxicabs should be excluded

under R.C. 5701.03 as part of a registered motor vehicle (since motor vehicles are not taxable personal property) or taxed as personal property being used in business under R.C. 5701.08. The equipment was installed by the taxi company after it purchased the vehicles and was removed before the taxi vehicles were resold.

{¶ 10} The taxicab owners contended that the equipment was an integral part of the motor vehicles. As a result, the taxi owners "urged that the meters and radios [were] 'inherently motor vehicle equipment,' as that term is employed in * * * Section 4503.08, Revised Code * * *." Id., 161 Ohio St. at 509, 53 O.O. 378, 120 N.E.2d 86.

{¶ 11} The BTA in *Taxicabs* reasoned that "the installation of the meters and two-way radios * * * [did] not make the vehicles more desirable as regular passenger cars; * * * [and] that the meters and radios [were] not necessary parts of the mechanical equipment of the vehicles as such * * *." Id. The BTA further argued that the sole function of the taximeters and two-way radios was to facilitate the operation of the company's taxicab business. We accepted the BTA's rationale and held that the taximeters and two-way radios "are not integral parts of such vehicles * * *." Id. at paragraph two of the syllabus.

{¶ 12} Applying the *Taxicabs* reasoning to this case, the first question is whether the installation of the refrigeration units makes the semitrailers more desirable. It does. The semitrailers must be equipped with refrigeration units to function as refrigerated semitrailers. The Tax Commissioner's assertion that anything on a semitrailer beyond that which is necessary to contain the cargo ignores the varying requirements of the different loads that are hauled by semitrailers.

{¶ 13} The second question is whether the refrigeration units are unnecessary to the mechanical equipment of the vehicles. In *Taxicabs,* the BTA reasoned that the sole function of taximeters and two-way radios was to facilitate the operation of the company's taxicab business. Further, without the taximeters and two-way radios the vehicle is still desirable, as evidenced by the resale of the vehicles after those items were removed. In contrast to *Taxicabs,* the facts here establish that the refrigeration units' function is to serve the semitrailers. Without the refrigeration units there would be no refrigerated semitrailers.

{¶ 14} Although instructive, the *Taxicabs* reasoning is not as expansive as that set forth in *Tejan.* To determine whether equipment was inherently truck equipment or separate personal property, the *Tejan* court set forth the following four inquiries:

{¶ 15} "First, does the apparatus become an integral part of the truck and form an addition to its structure so that it may be regarded as a part of the truck, itself?

{¶ 16} "Second, whether permanent or detachable, is it *per se* truck equipment?

{¶ 17} "Third, does its use indicate it to be functioning as part of the truck for truck uses, or as machinery, in itself, for its special use and results?

{¶ 18} "Fourth, does it carry the truck load, or assist in doing so, or does it merely become an object transported?" *Tejan*, 31 Ohio N.P. (N.S.) at 512.

{¶ 19} We believe that the four inquiries set forth in *Tejan*, with some slight modification, are appropriate to determine whether the refrigeration units are an integral part of the semitrailers.

{¶ 20} The first question is whether the refrigerated unit becomes an integral part of the semitrailer and forms an addition to its structure so that it may be regarded as a part of the semitrailer itself. The word "integral," as used here, and in the syllabus of *Taxicabs*, is defined in Webster's Third New International Dictionary (1986) 1173, as: "**1a:** of, relating to, or serving to form a whole : essential to completeness : organically joined or linked." The facts show that the refrigeration units are joined to the semitrailers and are essential to the completeness of the refrigerated semitrailers. Parisi's witness testified that the construction of a refrigerated trailer is different from the construction of other kinds of semitrailers. In addition to the refrigeration units, refrigerated semitrailers include special insulation in the walls, floors, and roofs, along with special posts and special interior lining and floors. All of these elements are integral to making a refrigerated semitrailer.

{¶ 21} Second, whether permanent or detachable, is the refrigeration unit per se semitrailer equipment? Generally speaking, all equipment is removable. However, if it is removable and is usable off the semitrailer there would be a strong indication that the equipment is not per se semitrailer equipment. A representative of a refrigerated semitrailer manufacturer testified that the refrigeration units were designed for transport refrigeration on the road, and that was the only purpose for which he had seen them used.

{¶ 22} The third inquiry is whether the primary use of the refrigeration units indicates that they function as part of the semitrailers for semitrailer uses, or as machinery for special use and results. The refrigeration unit primarily—and apparently exclusively—functions as part of the semitrailer. We have added the word "primary" to address those situations where there may be operations that would provide an exception from taxation for the equipment and other operations that would require levying the tax. The primary and principal use of the equipment in question is determinative of the exception. *Manfredi Motor Transit Co. v. Limbach* (1988), 35 Ohio St.3d 73, 75, 518 N.E.2d 936.

{¶ 23} The final question is whether the refrigeration unit carries the load, or assists in doing so, or whether it merely becomes an object of transportation. The sole purpose of the refrigeration units is to permit transporting foodstuffs that require refrigeration. Without refrigeration units the foodstuffs could not be transported.

{¶ 24} We realize that we have expanded upon the inquiry posed by the Tax Commissioner, i.e., "whether the equipment assists in performing the inherent vehicular functions of propelling or containing the cargo." Because we are dealing with specialty semitrailers, restricting the inquiry to the physical transportation of generic cargo is inappropriate. Rather, we are compelled to consider the necessity of using the equipment at issue here for the kind of transportation at issue.

{¶ 25} A witness who represented a semitrailer manufacturer testified that there are many different types of semitrailers. Each type of semitrailer is designed to serve a different specialized purpose. If our inquiry were limited to whether equipment on a semitrailer merely contained the load, we could not accurately determine whether the equipment on different types of semitrailers is an integral part of those semitrailers for tax purposes.

{¶ 26} For instance, under the Tax Commissioner's single inquiry of whether equipment on the trailer contained the load, the roof of a semitrailer might not be considered an integral part of the semitrailer. There are semitrailers built without roofs and they are capable of carrying cargo. We submit, however, that a roofless semitrailer would not be of much use in carrying a load of computers in a rainstorm. Thus, in order to carry certain types of loads and to effectuate its function and purpose, a semitrailer may need a roof. The function of the roof will be to assist in carrying the load by protecting it from the elements. When added, the roof is an integral part of the semitrailer. Likewise here, the refrigerated semitrailers need refrigeration units to assist in carrying the load by protecting the cargo from the ambient temperature. Accordingly, we hold that the refrigeration units are inherently part of the refrigerated semitrailers, and therefore not subject to personal property tax.

{¶ 27} We find the decision of the BTA to be unreasonable and unlawful, and hereby reverse it.

Decision reversed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON and O'DONNELL, JJ., concur.

---

Baker & Hostetler, L.L.P., Edward J. Bernert and Andrew M. Ferris, for appellant.

Jim Petro, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellee.