1 Ill.2d 614 (1953)
116 N.E.2d 392
CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant,
v.
ILLINOIS COMMERCE COMMISSION et al., Appellees.
No. 32877.
Supreme Court of Illinois.
Opinion filed November 18, 1953.
Rehearing denied January 18, 1954.
C.W. KROHL, and T.G. SCHUSTER, both of Chicago, (J.L. RICE, of counsel,) for appellant.
LATHAM CASTLE, Attorney General, of Springfield, (HARRY R. BEGLEY, JOHN L. ROACH, and MATILDA FENBERG, of counsel,) for appellee Illinois Commerce Commission.
HENSLEE, MONEK & MURRAY, of Chicago, (EDWARD B. HENSLEE, JOHN J. NAUGHTON, and ROBERT E. HARRINGTON, of counsel,) for appellee The Brotherhood of Railroad Trainmen.
Judgment reversed; order of commission set aside.
*615 Mr. JUSTICE KLINGBIEL delivered the opinion of the court:
On February 15, 1944, the Brotherhood of Railroad Trainmen filed a complaint with the Illinois Commerce Commission alleging that the Chicago, Burlington & Quincy Railroad Company failed to provide in its cabooses sanitary drinking water coolers with refrigerated food compartments, ice and individual drinking cups, and that it thereby endangered the lives, health, safety and comfort of the trainmen, in violation of section 57 of the Public Utilities Act. (Ill. Rev. Stat. 1943, chap. 111 2/3, par. 61.) Evidence was heard before the commission, and an order was entered directing the appellant to install in each caboose a drinking water container of modern design, constructed with three separate compartments (one of which shall be used to hold ice, one to hold drinking water and one to hold food stuffs,) and having an inverted faucet for drawing water therefrom. Appellant was also ordered to supply individual paper cups and a container for them. On appeal to the superior court of Cook County the order was affirmed. Appellant appeals directly to this court by authority of section 69 of the act. Ill. Rev. Stat. 1951, chap. 111 2/3, par. 73.
The record discloses that each of appellant's freight trains has a caboose for the use of the train crew, usually three men. Each caboose is equipped with a metal lined wooden icebox approximately 38 inches high, 28 inches long and 31 inches wide, in which ice, drinking water and food are placed for the use of the train crew. The icebox has a drain in the bottom. The drinking water supply is furnished in one or more 1 1/2-gallon metal cans having a covered lid and a spout fastened to the uppermost portion thereof, and a metal dipper or ladle is provided for use in drinking. The icebox has a removable metal tray or shelf which fits into the box above the ice, and on which food is placed. The trainmen usually place milk, cheese, *616 or meat directly upon the ice for better cooling. The can of drinking water is also kept in the icebox. The record further shows that appellant had offered to furnish a metal container with individual circular paper cups.
The only specific findings purporting to support the order of the commission are, first, that the drain in the icebox "becomes clogged by cinders and food stuffs and the melted ice gets slimy and dirty and remains in the box unless cleaned out by the train crew;" and second, "that the train crews and other occupants of the cabooses often drink out of the spout of the same water container and out of a common dipper or ladle." From these facts the commission concluded that the iceboxes and water containers are unsanitary and a hazard to the health and safety of the train crews, and that the appellant should be required to install the equipment specified in the order.
Appellant maintains, inter alia, that the findings of the commission are insufficient to support its order. We agree. There is no contention that the icebox facilities as such are insufficient or inadequate, or that the drain is too small, or that the water containers fail to keep the water sanitary. The hazard to health arises, not from any defect in the equipment itself but from the manner in which it is used. From the findings made in the order itself, it is apparent that the unsanitary condition results from the failure of those who use the facilities to exercise ordinary care and precaution in doing so. Careless use of facilities cannot be remedied by ordering new and different equipment. There is nothing in the record to show that similar dangers would not arise from an unsanitary use of new equipment, or that reasonable use and care of existing facilities would not eliminate the unsanitary condition found to prevail at present.
The commission, of course, has authority to require the installation of new and additional facilities if the same are necessary for the protection of employees' health. But to *617 justify such an order, findings must be made showing the necessity. The statute was not intended to empower the commission to order installation of new and different equipment unless additional protection is required for such purpose. (Commerce Com. v. New York Central Railroad Co. 398 Ill. 11.) In the case at bar the commission made no finding whatever that the additional protection is necessary to preserve or promote health. Its order recites merely the specific facts set forth above, and then states "that said respondent should be required to secure, install and maintain" the designated equipment. In the case cited we observed: "The power to make the determination whether the additional protection is so required is vested in the commission, but its finding to that effect is essential to the existence of its authority to order the installation of the additional protection."
Appellees rely upon Brotherhood of Trainmen v. Elgin, Joliet and Eastern Railway Co. 382 Ill. 55. We there held that an order requiring Illinois cabooses to be supplied with drinking-water containers, ice and cups did not constitute a burden on interstate commerce; that the Health and Safety Act did not repeal by implication the provisions of the Public Utilities Act authorizing the commission to require protection for the health and safety of its employees and the public; and that the relevant sections of the act did not violate the various constitutional provisions invoked in that case. We did not discuss the sufficiency of the findings to support the order. In any event, however, the evidence in that case disclosed a situation substantially different from that in the case at bar. The upper part of the icebox consisted of a sink used as a wash basin and having an open drain beneath, which extended along one side of the ice-water compartment. Drinking water was kept in an open bucket in the icebox, and sometimes food was stored in the same place. It is apparent that the hazard in that case was caused by the nature of the equipment itself, *618 and not, as in the case at bar, by the manner in which it was used.
We conclude that the order of the commission is not supported by its findings, and that the superior court should have set it aside. The judgment, therefore, will be reversed, and the order of the commission set aside.
Judgment reversed; order of commission set aside.
BRISTOW and MAXWELL, JJ., dissenting.