ACE STEEL BALING, INC., APPELLANT, *v.* PORTERFIELD, TAX COMMR., APPELLEE.

(No. 68-486—Decided July 23, 1969.)

*Messrs. Power, Griffith, Jones & Bell, Mr. Gerald A. Donahue* and *Mr. Andrew T. Jones,* for appellant.

*Mr. Paul W. Brown,* attorney general, *Mr. R. A. Malrick* and *Mr. Edgar L. Lindley,* for appellee.

SCHNEIDER, J. The issue before the Board of Tax Appeals was whether the primary use of appellant taxpayer's self-propelled railway cranes in its scrap steel plant was in the processing phase of that operation. See *Mead Corp.* v. *Glander* (1950), 153 Ohio St. 539. If it was, admittedly the one crane purchased in the taxable years in question would be exempt from the Ohio Sales and Use Tax, as would be

the supplies necessary to maintain and fuel three other such cranes. See Sections 5739.02 and 5741.02, Revised Code.

If, on the other hand, the primary use of the cranes was found to be the unloading of the raw materials (mainly wrecked automobile bodies), the loading of "bales" of scrap, the movement of railway hopper cars about the taxpayer's yard and the transfer of bales to and from storage piles, then the disputed items were concededly taxable.

The evidence adduced before the board consisted solely of the testimony of appellant's chief operating officer, who described in lengthy and meticulous detail the entire operation and produced numerous photographs and other data to support his testimony. The Tax Commissioner's assessment file, which was also before the board and in which it was conceded that the cranes were employed for both taxable and nontaxable purposes, contributed nothing to the solution of the issue as to primary use.

If, in denying exempt status to the items in dispute, the board had limited itself to a finding, in effect, that the evidence before it was insufficient to support the claim for exemption, the question before us would necessarily be limited to the weight of the evidence. Compare *Lakeside Truck Rental, Inc.*, v. *Bowers* (1962), 173 Ohio St. 108. The board was not required to accept the testimony of the sole witness simply because it was uncontradicted, unimpeached and unchallenged. The trier of facts always has the duty, in the first instance, to weigh the evidence presented, and has the right to accept or reject it.[1]  See *Goldman* v. *Commissioner*

---

[1] No duty is expressly enjoined upon the Board of Tax Appeals by Section 5717.02, Revised Code, to make special findings of fact. The board is not subject to the Administrative Procedure Act. (Section 119 *et seq.*, Revised Code.)

If an appeal is heard by one of the board's examiners, as in the instant case, Section 5717.02, Revised Code, does not require him to report his "findings for affirmation or rejection" to the board. The record discloses no findings by the examiner.

However, in making special findings the board did follow the general rule of administrative law. See decisions and cases cited in Cooper, 2 State Administrative Law, 465 *et seq.* (Necessity and Sufficiency of Findings), and pages 738-739.

(1967), 388 F. 2d 476; 30 American Jurisprudence 2d 225 and 236 *et seq.*, Evidence, Sections 1080 and 1084 *et seq.* But compare *Bloch* v. *Glander* (1949), 151 Ohio St. 381.

If a question as to the weight of the evidence was indeed involved here, we would in all probability defer to the judgment of the board. This court is no longer the sole tribunal available for the review of decisions of the Board of Tax Appeals. Therefore, where it is claimed that a decision of such board is against the weight of the evidence, the Court of Appeals is the appropriate court to consider the question, which involves a review of the whole record.[2]

In the instant case, however, the board fully accepted all the competent testimony of the sole witness. In reporting its decision, it recited the following:

"Old automobiles are brought in the south gate of appellant's yard by tow trucks, dump trucks, or semi-trailers. If they are brought in by semi-trailers, they are unloaded by appellant's *cranes*. They are taken to an adjacent area where torchmen start to remove all nonferous metal that they can reach, such as door handles, trim, grille, etc. The torchmen notch the car at each door post so that the car

---

[2]Even without a statutory rule (Section 2505.31, Revised Code) relieving this court from the duty of weighing evidence, we would not presume to re-weigh evidence following a review thereof by a Court of Appeals. There is no accurate measuring rod by which evidence should be weighed by a trier of facts, much less by a court of review. It is sometimes said that a judgment will not be reversed as being "against the weight of the evidence," in contrast to being "unsupported by sufficient credible evidence," unless it shocks the conscience of the court. Implicit in any such statement is the recognition that a review of evidence on its *weight*, rather than its *sufficiency*, is, at best, second guessing the trier. Yet such "second guessing" is the accepted duty of the Courts of Appeals in Ohio, in appeals on law only as well as appeals on law and fact. See cases cited in *Lincoln Properties* v. *Goldslager*, 18 Ohio St. 2d 154.

In actuality, the only substantive difference which now exists between the two appeals in this state lies in the disposition of the cause after review, an aspect which has never received rational analysis by this court except in *Nyiry* v. *Modern Brotherhood of America* (1915), 92 Ohio St. 387. But there is no "raison d'etre" for third guessing by the Supreme Court.

can be torn apart by the *crane* and the baler. The *crane* is used to turn the car over so that the torch job can be completed, and torchmen remove the rear end, the front end, and the frame bolts. The *crane* is used to pull the motor out of the body of the car. The *crane* also rips the frame from the car. When the torching job is completed, the *crane* places the body of the car in the baler, which grabs it while the *crane* pulls the body apart at the notch points. The *crane* then reverses the auto body in the baling box so it can receive the most amount of pressure from the bailer. Finally, the *crane* removes three or four of the bales at a time to a railroad car, where they are gone over by the torchmen prior to being shipped to appellant's customers.

"When automobiles are to be burned and sheared, the *crane* places the car in the incinerator, and after the car is removed from the incinerator, the *crane* takes the car to a place where additional torchmen go over it and remove nonferous metals, and other contaminates. The *crane* removes frames from the cars, and then takes them to the shear, where the *crane* loads the shear in a particular manner so that the shear can operate effectively. In addition, the *crane* is used to blend various types of material, such as bumpers, into the mix being sent into the shear." (Emphasis supplied.)

While the foregoing recitation is not designated a "finding," that it is the equivalent, in substance, to a special finding by the trier of the facts is evident from the nub of the board's decision, which is, simply, that the taxpayer had not produced a time "study" of the taxable and nontaxable uses of its crane, and for that reason had not proved its claim for exemption.

Consequently, the board jumped the rail on a question of law. This court did not elaborate upon the term "primary use" which was the basis of this court's decision in the *Mead case, supra* (153 Ohio St. 539). Necessarily, we are here and now moved to say that "primary use" is not merely the quotient of the time that a device is utilized in a taxable, *vis-a-vis* a nontaxable, activity. "Primary use"

connotes primacy in utility or essentiality, in quality as well as quantity. The value of the tool to the product is as important as the time the tool is engaged in fashioning the product.

It is entirely conceivable for a tool to contribute substantially to the manufacture of a product in a relatively brief portion of a working day. To avoid "dead time," and to defray a part of its cost, a taxpayer may be able to employ the same tool for a greater period of time in an incidental task which only indirectly contributes to the finished product—loading and unloading, for example, as in this case. If acquired for and devoted to the latter purpose alone, its purchase would admittedly be taxable. On the other hand, in the first example we would be hard pressed to say that the primary use of the device was for a taxable purpose, solely because more of its operating time was consumed therein. Compare *W. L. Harper Co.* v. *Peck* (1954), 161 Ohio St. 300.

The story of the crane in this case, as accepted and related by the board, portrays a situation so free from uncertainty that it would be difficult to understand by what means the baler or shear could operate without a crane. Certainly, manpower could not supply the utility of holding and turning the automobile carcass while it is first cut or torn, and then compressed. The crane clearly appears to be an indispensable component of the taxpayer's operation.

The Tax Commissioner contends, however, that there is no evidence to show that the particular crane purchased in the period in question is used in the manner described, the inference being that it may be used solely in loading or unloading and that the taxpayer has not dispelled this inference. This claim is relatively captious, in view of the statement of the board that "it is also clear from the testimony that the crane at issue is one of several railway cranes which are used interchangeably for a number of purposes in addition to those previously set forth. . . ." (The board went on to list certain taxable purposes already referred

to.) Moreover, the records of the Tax Commissioner's examiner indicate no dispute as to the complete interchangeability of the crane.

The decision of the board derived from an inference of an ultimate fact, *i. e.*, a factual conclusion derived from given basic facts. The reasonableness of such an inference is a question appropriate for judicial determination. "What the evidence in a case tends to prove, is a question of law; and when all the facts are admitted which the evidence tends to prove, the effect of such facts raises a question of law only." *Turner* v. *Turner* (1867), 17 Ohio St. 449, 452. See, also, *Southern Pacific Co.* v. *Pub. Util. Comm.* (1953), 41 Cal. 2d 354, 362, 260 P. 2d 70.

In this appeal, the findings of the agency not only do not support, but contradict its conclusion. In such case, the latter must fall and the findings must prevail. *Matlock* v. *Indus. Comm.* (1950), 70 Ariz. 25, 215 P. 2d 612; *Chicago, B. & Q. Rd. Co.* v. *Illinois Commerce Comm.* (1954), 1 Ill. 2d 614, 116 N. E. 2d 392; *Public Service Comm.* v. *Indiana Bell Tel. Co.* (1955), 235 Ind. 1, 130 N. E. 2d 467; *Fisher School* v. *Assessors of Boston* (1950), 325 Mass. 529, 91 N. E. 2d 657; *New York, S. & W. Rd. Co.* (1957), 25 N. J. 343, 136 A. 2d 408; *New Jersey Bell Tel. Co.* v. *Communications Workers of America* (1950), 5 N. J. 354, 75 A. 2d 721; *Alford* v. *Quality Chevrolet Co.* (1957), 246 N. C. 214, 97 S. E. 2d 869.

*Decision reversed.*

TAFT, C. J., MATTHIAS, HERBERT and DUNCAN, JJ., concur.[8]

O'NEILL, J., concurs in the judgment.

---

[8]This decision was made after the death of JUSTICE ZIMMERMAN and before the appointment of a successor.