OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

SFZ Transportation, Inc., Appellant, v. Limbach, Tax Commr., Appellee.
[Cite as SFZ Transp., Inc. v. Limbach (1993),    Ohio St.3d   .]
Taxation -- Sales and use taxes -- Exemption from sales tax for items used directly in rendition of public utility service -- Private carrier company meets criteria for classification as a public utility, when.
(No. 92-1481 -- Submitted April 20, 1993 -- Decided June 30, 1993.)

Appeal from the Board of Tax Appeals, No. 88-X-744.

SFZ Transportation, Inc. ("SFZ"), appellant, contests the assessment of sales and use taxes on purchases, including rentals, of trucks and trailers which it claims it used directly in the rendition of a public utility service.

SFZ was formerly the transportation division of Scott & Fetzer Company. After deregulation of the interstate motor carrier industry in 1981, Scott & Fetzer decided to develop this division into a separate business. Scott & Fetzer, consequently, incorporated SFZ.

After its incorporation, SFZ obtained interstate, Ohio, and Kentucky common carrier authority. It intended to expand its business, which was as a contract carrier for Scott & Fetzer and its divisions, into a free-standing contract and common carrier business. SFZ acquired the transportation equipment formerly owned by Scott & Fetzer and entered into leases of additional equipment as its business grew. According to Ex. 3, the number of its contract carrier clients increased from fifteen in 1983 to seventeen in 1985, and the number of its common carrier clients increased from two hundred eighty-four in 1983 to four hundred sixty-five in 1985. Its contract mileage comprised 55 percent of its business in 1983, 49 percent in 1984, and 49.1 percent in 1985; the rest was common carrier mileage. Its contract revenues were 58.7 percent of total revenues in 1983, 55.7 percent in 1984, and 53.6 percent in 1985; the balance was common carrier revenue. Overall, its revenues increased from $3,749,562 in 1983 to $5,040,323 in 1985. According to Ex. 4, its total tractor

fleet increased from fifteen in 1981 to thirty-seven in 1986, and its trailer fleet increased from twenty-four in 1981 to sixty-eight in 1986.

The Tax Commissioner, appellee, audited SFZ's purchases for the period April 1, 1983 through December 31, 1985. She concluded that SFZ used its equipment primarily as a contract carrier, and she assessed sales and use taxes of $140,809.64, including penalty, against it. After review, the commissioner conditionally cancelled the penalty and finally assessed SFZ $122,443.16 in sales and use taxes.

On appeal, the BTA, in the matter relevant herein, affirmed the commissioner. The BTA admitted Ex. 3 into evidence but declined to accord it much weight. It decided that SFZ did not provide an understandable explanation for how the exhibit was created and why it arrived at different quantitative conclusions than did the commissioner on the comparison of common carrier and contract carrier revenues in determining the primary use of the equipment. The BTA, though, ruled that the testimony of SFZ's president on SFZ's repositioning in the transportation industry was credible.

However, the BTA decided that SFZ did not rebut the presumption established by the commissioner's agent that the lucrative core of SFZ's business was still primarily as a contract carrier during the audit period. Consequently, the BTA found that the primary use of the equipment was not in the rendition of a public utility service.

The cause is before this court upon an appeal as of right.

Jones, Day, Reavis & Pogue and John C. Duffy, Jr., for appellant.

Lee I. Fisher, Attorney General, and Richard C. Farrin, Assistant Attorney General, for appellee.

Per Curiam. In Proposition of Law No. 1, SFZ argues that the BTA's ultimate legal conclusions concerning Ex. 3 were unlawful and that its conclusion as to the primary use of the equipment was unreasonable. It asserts that the entire record establishes that the primary use of the equipment was in the common carrier business and that the equipment, consequently, was used directly in the rendition of a public utility service and excepted from taxation.

The commissioner, on the other hand, argues that we cannot disturb the factual determination by the BTA as to the primary use of the equipment because SFZ has failed to establish that the BTA's finding was an abuse of discretion. Nevertheless, we agree with SFZ and reverse the BTA's decision. We also take this opportunity to clarify our review of the BTA's factual determinations.

R.C. 5739.01(E)(2) excepts from the sales tax purchases that are to be used directly in the rendition of a public utility service, and R.C. 5741.02(C)(2) excepts such purchases from the use tax. In Inland Refuse Transfer Co. v. Limbach (1990), 53 Ohio St.3d 10, 11, 558 N.E.2d 42, 43, citing Manfredi Motor Transit Co. v. Limbach (1988), 35 Ohio St.3d 73, 76, 518 N.E.2d 936, 939, we set forth the conditions necessary to meet the public utility exception: "First, the taxpayer must be a regulated public utility. Second, it must render a

public utility service when the items are purchased.  Third, it must use the items directly in rendering the public utility service."

Further, in Manfredi, we required the BTA to consider the primary use of the purchased items in light of Ace Steel Baling, Inc. v. Porterfield (1969), 19 Ohio St.2d 137, 48 O.O.2d 169, 249 N.E.2d 892.  According to paragraph two of the syllabus of Ace Steel Baling:

"The 'primary use' of an item of equipment, for the purposes of taxing, or excepting from tax, its sale or use under Sections 5739.02 and 5741.02, Revised Code, is not to be determined solely from a measure of the relative time it is utilized in a taxable and a nontaxable capacity but also from the value of its direct contribution to the product which is processed."

We have consistently held that the board's determinations on the weight to be given evidence and the credibility of witnesses will not be disturbed, absent a showing of patent abuse of discretion.  Southwestern Portland Cement Co. v.Lindley (1981), 67 Ohio St.2d 417, 421-422, 21 O.O.3d 261, 264, 424 N.E.2d 304, 307; and Cardinal Fed. S & L Assn. v. Cuyahoga Cty. Bd. of Revision (1975), 44 Ohio St.2d 13, 19-20, 73 O.O.2d 83, 87, 336 N.E.2d 433, 437.  However, we have reversed BTA decisions on ultimate factual conclusions, i.e., legal conclusions.  Avco Broadcasting Corp. v. Lindley (1978), 53 Ohio St.2d 64, 7 O.O.3d 145, 372 N.E.2d 350 (court reversed BTA decision on true or real object test), and Consolidation Coal Co. v. Porterfield (1971), 25 Ohio St.2d 154, 54 O.O.2d 277, 267 N.E.2d 304 (court reversed BTA decision on taxable moment as unsupported by any probative evidence).

In Ace Steel Baling, supra, 19 Ohio St.2d at 142, 48 O.O.2d at 171-172, 249 N.E.2d at 895-896, we held as follows:

"The decision of the board derived from an inference of an ultimate fact, i.e., a factual conclusion derived from given basic facts.  The reasonableness of such an inference is a question appropriate for judicial determination.  'What the evidence in a case tends to prove, is a question of law; and when all the facts are admitted which the evidence tends to prove, the effect of such facts raises a question of law only.'  Turner v. Turner (1867), 17 Ohio St. 449, 452.  See, also, Southern Pacific Co. v. Pub. Util. Comm. (1953), 41 Cal.2d 354, 362, 260 P.2d 70 [75].

"In this appeal, the findings of the agency not only do not support, but contradict its conclusion.  In such case, the latter must fall and the findings must prevail.  * * *" (Citations omitted.)

A review as to the reasonableness and lawfulness of the agency decision necessarily includes an examination of the record "to examine the evidence and determine as to the ultimate facts established by it, and whether such ultimate facts furnished sufficient legal predicate upon which to base the order complained of."  Hocking Valley Ry. Co. v. Pub. Util. Comm. (1919), 100 Ohio St. 321, 325, 126 N.E. 397, 398.  "The fact that a question of law involves a consideration of the facts or the evidence, does not turn it into a question of fact or raise a factual issue; nor does that consideration involve the court in weighing the evidence or passing upon its

credibility."  O'Day v. Webb (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, paragraph two of the syllabus.

In the present case, the BTA admitted Ex. 3 into evidence, based on Evid.R. 1006.  Nevertheless, it gave "little weight" to the exhibit, because it found that a "weak foundation" for credibility had been established.  It found that SFZ's witness had not explained discrepancies between Ex. 3's comparisons of contract carrier and common carrier revenues and the commissioner's comparisons of revenues based on the same data. However, the discrepancies were only in the comparisons on the basis of revenues; Ex. 3's comparisons on the basis of mileage were uncontradicted.  The BTA's rejection of this uncontradicted data in determining the primary use of the equipment is not the sort of weighing of evidence or determination of credibility to which we must defer.

SFZ's witness, its president, thoroughly explained how he derived the numbers set forth on Ex. 3.  The hearing officer freely, and at times in the middle of direct or cross-examination, explored the witness's testimony on this exhibit.  Thus, the BTA's apprehension about the exhibit does not square with the record.  In the final analysis, however, the BTA reached its conclusion on primary use because contract carrier revenues were greater than common carrier revenues.

SFZ's president's testimony, part of which the BTA complimented for its clarity and credibility, explained this difference, which explanations the BTA ignored.  The testimony pointed out that the contract specific commodity rate between certain points SFZ regularly traveled was greater than the rate it could charge for common carrier service over the same distance, certain specific commodity rates in the common carrier tariff were less than the general commodity rates in that tariff, and contract carrier revenues included amounts for loading, unloading, and storage services which SFZ did not normally receive as a common carrier.  Consequently, under the given basic facts, we hold that the BTA's ultimate legal conclusion of the primary use of the equipment is unreasonable.

SFZ has established the equipment's primary use to be in the rendition of a public utility service.  It had many more common carrier clients than contract carrier clients, its common carrier mileage, at the end of the audit period, increased to exceed the contract mileage, and the revenue disparity was explained by the additional services provided contract clients and higher contract rates.  SFZ also could have handled the contract business with its existing 1982 fleet; the fleet increased from forty units in 1982 to ninety-six units in 1985.  The basic facts support the ultimate factual conclusion that the primary use of the equipment was directly in the rendition of public utility service.

By holding as we have, we need not address SFZ's alternative arguments.  Accordingly, we reverse the decision of the BTA because it is unreasonable.

Decision reversed.

Moyer, C.J., A.W. Sweeney, Wright,  Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

Douglas, J., dissents.