[This opinion has been published in *Ohio Official Reports* at 71 Ohio St.3d 11.]

AT&T TECHNOLOGIES, INC., APPELLANT AND CROSS-APPELLEE, *v*. LIMBACH,

TAX COMMR., APPELLEE AND CROSS-APPELLANT.

[Cite as *AT&T Technologies, Inc. v. Limbach*, 1994-Ohio-90.]

*Taxation—Sales and use taxes—Computer system facilities used in manufacture and processing for sale of electronic telecommunication switching products—Automatic Storage and Retrieval System is transportation and handling equipment exempted by former R.C. 5739.02(B)(16)—High Speed Test Equipment not entitled to exemption when not used within the manufacturing period—Remission of penalty assessed by commissioner.*

(No. 93-568—Submitted July 8, 1994—Decided November 23, 1994.)

APPEAL and CROSS-APPEAL from the Board of Tax Appeals, No. 90-A-1047.

———————————

{¶ 1} AT&T Technologies, Inc. ("AT&T") manufactures and processes for sale electronic telecommunication switching products at its Columbus, Ohio plant. AT&T employs two computer system facilities to make these products: the Automatic Storage and Retrieval System ("ASRS") and the High Speed Test Equipment ("HSTE").

{¶ 2} Following a consumer sales and use tax audit of the period January 1, 1985 through December 31, 1987, the Tax Commissioner assessed AT&T $1,614,113.76 plus a fifteen-percent statutory penalty. On petition for reassessment, the commissioner affirmed the assessment but reduced the penalty to ten percent.

{¶ 3} AT&T appealed to the Board of Tax Appeals ("BTA"). The BTA refused to exempt the ASRS but did exempt the HSTE, upon finding that "the testing of the component parts to be used in appellant's production implicitly occurs within the manufacturing period."

**{¶ 4}** The cause is now before this court upon appeal and cross- appeal as of right.

_____

*Michael J. Guerriero*; *Jones, Day, Reavis & Pogue* and *John C. Duffy, Jr.*, for appellant and cross-appellee.

*Lee Fisher*, Attorney General, and *Richard C. Farrin*, Assistant Attorney General, for appellee and cross-appellant.

_____

***Per Curiam.***

**{¶ 5}** The decision of the BTA is reversed in part and affirmed in part.

**{¶ 6}** As to the ASRS, AT&T argues that it is an adjunct to manufacturing, excepted by former R.C. 5739.01(R), and, in the alternative, that it is transportation and handling equipment exempted by former R.C. 5739.02(B)(16).

**{¶ 7}** AT&T's alternative argument is cogent and persuasive. AT&T contends that the function of the ASRS is to coordinate the delivery of materials to the rest of the production facility and that the primary use of the ASRS is for interplant or intraplant transfers of tangible personal property in the process of production for sale.

**{¶ 8}** The ASRS is a computer-operated complex of machinery and equipment occupying about thirty thousand square feet of floor space, with fourteen aisles containing storage bins stacked three stories high. The ASRS handles approximately sixty thousand different component parts, some of which are manufactured at the Columbus plant. Of the balance of components, about fifty percent are manufactured at other AT&T plants and fifty percent by outside vendors. These component parts are stored in the ASRS, for periods varying from an hour to several weeks, until needed for assembly into finished products.

**{¶ 9}** In response to a customer's order for an electronic switching system product, ASRS pulls the necessary parts and transports them to an assembly area.

Computer-operated cranes in each aisle select component parts from storage bins and move them to an assembly area. As a witness for AT&T stated, the ASRS "regulates and times the movement of the cranes and the proceedings of the entire operation so they all come together at one centralized point."

{¶ 10} AT&T and the commissioner disagree about the proper focus on the primary use of equipment: whether it pivots on the nature of use, or the quantity of use. There is also a factual dispute over the percentage of components which are manufactured by AT&T, compared with those purchased from outside suppliers.

{¶ 11} Former R.C. 5739.02(B)(16) exempted from taxation sales to (or use by) persons engaged in manufacturing or processing "of handling and transportation equipment * * * used in intraplant or interplant transfers or shipments of tangible personal property in the process of production for sale by manufacturing [or] processing * * *, where the plant or plants within or between which such transfers or shipments occur are operated by the same person." Am.S.B. No. 231, 140 Ohio Laws, Part I, 790, 832.

{¶ 12} The BTA rejected AT&T's contention that former R.C. 5739.02(B)(16) granted exemption from tax because the BTA could not determine whether a majority of the parts had come from other AT&T facilities. However, the record shows that the ASRS was used in transporting manufactured components which were assembled into a finished product, and for no other purpose. Some percentage of these components was manufactured by AT&T either in Columbus or at one of its other locations; thus, the plants between which these transfers were made were "operated by the same person." See *White Motors Corp. v. Kosydar* (1977), 50 Ohio St.2d 290, 296, 4 O.O. 3d 451, 454, 364 N.E.2d 252, 255. Sales of handling equipment used to make such transfers are exempt.

{¶ 13} Where an item's exemption depends on its use, its primary use is the criterion. *Mead Corp. v. Glander* (1950), 153 Ohio St. 539, 42 O.O. 24, 93 N.E.2d 19. Under the second branch of the syllabus of *Ace Steel Baling, Inc. v. Porterfield*

(1969), 19 Ohio St.2d 137, 48 O.O.2d 169, 249 N.E.2d 892, primary use is a qualitative consideration, not a quantitative one. We said in *Ace Steel Baling* at 140-141, 48 O.O. 2d at 171, 249 N.E.2d at 895: "'[P]rimary use' is not merely the quotient of the time a device is utilized in a taxable, *vis-a-vis* a nontaxable, activity. 'Primary use' connotes primacy in utility or essentiality, in quality as well as quantity. The value of the tool to the product is as important as the time the tool is engaged in fashioning the product."

{¶ 14} The record supports AT&T's contention that the ASRS functioned in a capacity essential to AT&T's manufacturing and processing of its saleable products. Whether AT&T's use of the manufactured components produced by AT&T constituted fifty percent or less, or more than fifty percent, is of little consequence. *Id.* In the manufacture of its products this use of the ASRS was primary. See *SFZ Transp., Inc. v. Limbach* (1993), 66 Ohio St.3d 602, 613 N.E.2d 1037. This decision of the BTA is unreasonable and unlawful and it is reversed.

{¶ 15} The commissioner's cross-appeal deals with a narrow issue. She asserts that the BTA erred in excepting the HSTE based upon the BTA's finding that the HSTE was an adjunct under former R.C. 5739.01(E)(2) and 5739.01(R), and that the BTA erred in failing to find that the HSTE was used prior to the beginning of manufacturing. Rather, the commissioner contends that because the HSTE was not used within the manufacturing period, it is not entitled to an exemption from sales or use tax.

{¶ 16} We agree. When items for the HSTE were purchased in 1985, R.C. 5739.01(E) and (R) read as follows:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

" * * *

4

"(2)* * * to use or consume the thing transferred directly in the production of tangible personal property * * * for sale by manufacturing [or] processing * * *[.]

"(R) 'Manufacturing' or 'processing' means the transformation or conversion of material or things into a different state or form from that in which they originally existed and, for the purpose of the exceptions contained in division (E)(2) of this section, includes the adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after such transforming or converting has commenced." Sub. S.B. No. 112, 140 Ohio Laws, Part I, 225, 228-229, 232.

{¶ 17} We have applied this standard many times. As we said in *Ball Corp. v. Limbach* (1992), 62 Ohio St.3d 474, at 478, 584 N.E.2d 679, at 682-683:

"The test for determining the exemption from taxation of equipment by reason of its status as adjunct under former R.C. 5739.01(S), later codified at (R), is: '* * * as announced in *Canton Malleable Iron Co. v. Porterfield* (1972), 30 Ohio St.2d 163, 176-177, 59 O.O.2d 178, 185, 283 N.E.2d 434, 442] * * *:

"'"Subsection (S) demands that the thing sought to be excepted from taxation be (1) an adjunct, (2) used at the same location, and (3) used after the transforming or conversion has commenced. Subsection (E)(2) adds the additional requirement that the thing be adjunct to direct use or consumption. * * *" (Emphasis sic.) * * * 'Bird & Son [*Inc. v. Limbach* (1989)], *supra*, 45 Ohio St.3d [76] at 82, 543 N.E.2d [1161] at 1167."

{¶ 18} Upon receipt at AT&T's Columbus plant, the HSTE tests integrated circuits to locate any defects prior to their introduction into the manufacture of finished products. The HSTE is used before "the transforming or conversion has commenced"; it is not "adjunct to direct use or consumption."

{¶ 19} The BTA found that the testing performed by the HSTE is exempt even though it occurred prior to the beginning of the manufacturing process. The

BTA found the HSTE was used "implicitly" in an exempt fashion under former R.C. 5739.01(E)(2) and (R). The General Assembly did not authorize such an expansion of the express exception from taxation and the BTA's usurpation was unreasonable and unlawful. The BTA's decision as to the HSTE is reversed. Cf. *Jeep Corp. v. Limbach* (1989), 47 Ohio St.3d 67, 68, 547 N.E.2d 975, 977.

{¶ 20} As to the statutory penalty, we affirm the decision of the BTA. In *Jennings & Churella Constr. Co. v. Lindley* (1984), 10 Ohio St.3d 67, 10 OBR 357, 461 N.E.2d 897, as in this case, the appellant argued that it had established a record of compliance with the tax laws. However, we concluded:

"The imposition of a penalty is mandatory; extraneous matters such as past tax records are only considerations in the remission decision." *Id.* at 70, 10 OBR at 360, 70, 461 N.E.2d at 900.

{¶ 21} We reached a similar conclusion in *Frankelite Co. v. Lindley* (1986), 28 Ohio St.3d 29, 31, 28 OBR 90, 92, 502 N.E. 213, 215, where we upheld the BTA's determination that the commissioner had not abused his discretion in failing to remit the penalty:

"The remission of a penalty under this provision is discretionary with the Tax Commissioner and cannot be reversed by the Board of Tax Appeals unless an abuse of discretion is demonstrated. *Interstate Motor Freight Sys. v. Bowers* (1960), 170 Ohio St. 483, 485 [11 O.O.2d 240, 241, 166 N.E.2d 229, 231]. In that case the court held that it was unlawful for the Board of Tax Appeals to order the remission of a penalty where it had not made a specific finding that the Tax Commissioner had abused his discretion.* * *

"The scope of our review of board decisions, however, as set forth in R.C. 5717.04, is limited to a determination of whether the board's decision is unreasonable or unlawful."

{¶ 22} The finding of the BTA that the commissioner had not abused her discretion is not unreasonable or unlawful, and it is affirmed.

**{¶ 23}** Accordingly, the decision of the BTA is reversed in part and affirmed in part.

*Decision reversed in part*
*and affirmed in part.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

————————————