[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 687.]

TANSON HOLDINGS, INC., APPELLANT, *v*. DARKE COUNTY BOARD OF REVISION, APPELLEE.

[Cite as *Tanson Holdings, Inc. v. Darke Cty. Bd. of Revision*, 1996-Ohio-230.]

*Taxation—Real property valuation—Board of Tax Appeals' inference that sale of real property was not an arm's-length transaction is neither unreasonable nor unlawful, when.*

(No. 95-470—Submitted November 30, 1995—Decided March 1, 1996.)

APPEAL from the Board of Tax Appeals, No. 93-M-590.

———————————

{¶ 1} For tax year 1992, the Darke County Auditor valued the five parcels of real property owned by appellant, Tanson Holdings, Inc. ("Tanson"), at a true value of $107,230 for land and $372,170 for buildings, for a total true value of $479,400. Tanson filed a complaint with the Darke County Board of Revision ("BOR"), alleging that the true value should be zero for the land and $200,000 for the buildings. No witnesses or evidence was presented by Tanson at the hearing before the BOR. The BOR affirmed the auditor's assessment and Tanson appealed to the Board of Tax Appeals ("BTA").

{¶ 2} The real property in question consists of approximately nineteen acres located in Ansonia, Ohio, which was originally owned by the Lambert Corporation. In August 1988, all the stock of Lambert Corporation was sold by the Lambert family to TMW, Inc., a corporation solely owned by Thomas M. Willoughby. At the time of the stock purchase extensive warranties for environmental matters were given by the sellers to TMW, Inc.

{¶ 3} In January 1989, three underground storage tanks were found on the Lambert Corporation property. Subsequent testing of the ground around the tanks apparently disclosed that extensive contamination had occurred prior to the

purchase of Lambert Corporation by TMW, Inc. Willoughby testified that from January 1989 until February 1992 the expenses for "legal fees, and interest and everything," including consultant fees, eventually approached $300,000. Of this amount, Willoughby estimated that about $175,000 had been hard costs for the cleanup.

{¶ 4} A portion of the original purchase price of approximately $2,600,000 paid by TMW, Inc. for the Lambert Corporation stock was financed by Society Bank. When Society Bank learned of the environmental problems, it allowed TMW, Inc. to transfer the real estate and approximately $950,000 of debt to Tanson Holdings, Inc. ("Tanson"), a new corporation created solely to own the real property of TMW, Inc. Willoughby was also the sole shareholder of Tanson. Thereafter, in September 1990, title to the real property was transferred from Lambert Corporation to Tanson. The conveyance fee statement for the transfer from Lambert Corporation to Tanson indicated a price of $950,000. Willoughby stated that the price was set at $950,000 because that was the amount of the existing debt transferred with the property. At a later time, Society Bank sold its mortgage for $30,000 to Ohio Lawn & Garden, Inc., a corporation owned by a limited partnership which had Willoughby as its general partner.

{¶ 5} On October 21, 1993, Tanson transferred the real property by quitclaim deed to Knowlton Realty Company ("Knowlton") for the sum of $25,000, which was paid to Ohio Lawn & Garden, Inc. Knowlton is apparently owned by Steven Lambert, the son of William Lambert. Knowlton took the property subject to a mortgage held by William B. Lambert, the father of Steven Lambert.

{¶ 6} Following litigation, brought by Willoughby, William Lambert paid $50,000 towards the cleanup costs of the property. The agreement of sale between Tanson and Knowlton provided that Knowlton and Steven Lambert would indemnify and hold Tanson and Willoughby harmless for any future costs or

liability with respect to any environmental issue connected with the operations of Lambert Corporation to approximately mid-1986.

{¶ 7} At the hearing before the BTA, Willoughby presented a copy of a report from a consultant, which estimated possible cleanup costs at just under $1,000,000. However, Willoughby admitted that, as regards the cleanup of the property, there never had been any citations or enforcement actions by the EPA involving this property.

{¶ 8} Thomas J. Johnson, an appraiser with the Cole, Layer, Trumble Company, testified on behalf of the auditor's office. Johnson's involvement with the real property began when Tanson filed a complaint with the BOR in 1990, alleging contamination problems. As a result of a hearing for a prior year before the BOR, it had reduced the valuation for 1990 and 1991 to account for cleanup costs expended by Tanson. Johnson, who had personally viewed the property and reviewed the situation, did not offer an opinion of value, but stated that his company's prior appraisal of $480,000 appeared to be a fair and equitable value.

{¶ 9} The BTA affirmed the BOR. Tanson filed a notice of appeal with this court.

{¶ 10} This cause is now before this court upon an appeal as of right.

———————————

*Ball, Noga & Tanoury* and *Ronald B. Noga*, for appellant.

*Jonathan P. Hein*, Darke County Prosecuting Attorney, and *Richard M. Howell*, Assistant Prosecuting Attorney, for appellee.

———————————

**_Per Curiam._**

{¶ 11} Appellant contends that the BTA erred because there was no reliable or probative evidence to support the BTA's determination that the sale from Tanson to Knowlton was not an arm's-length sale. In *Walters v. Knox Cty. Bd. of Revision* (1989), 47 Ohio St.3d 23, 546 N.E.2d 932, we defined the elements of an arm's-

length sale, stating that "it is voluntary, *i.e.*, without compulsion or duress; it generally takes place in an open market; and the parties act in their own self-interest." After reviewing the evidence in this case, the BTA found that the relationship between the grantor and the grantee "is far from independent." The BTA further stated, "[T]his Board does not find that a transfer between appellant and the son of the prior owner exhibits the indices of a market sale."

{¶ 12} This court is not a "'super' board of tax appeals." *Hercules Galion Products, Inc. v. Bowers* (1960), 171 Ohio St. 176, 12 O.O.2d 292, 168 N.E.2d 404. The BTA is vested with wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses which come before it. *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433. In this case, Tanson had the duty to prove its right to a reduction in value. *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 527 N.E.2d 874. One of the facts which Tanson had to prove was that the sale was an arm's-length sale. In *Conalco, Inc. v. Monroe Cty. Bd. of Revision* (1977), 50 Ohio St.2d 129, 4 O.O.3d 309, 363 N.E.2d 722, we held in paragraph one of the syllabus: "The best evidence of the 'true value in money' of real property is an actual, recent sale of the property in an arm's-length transaction." However, the evidence presented to the BTA raised questions about whether the sale was an arm's-length sale between independent parties. Willoughby testified that, when he purchased the stock from the Lambert family, extensive warranties had been given by the sellers. Willoughby further testified that there had been litigation with William B. Lambert, the father of Steven Lambert. Steven Lambert had been one of the managers of the property at the time the environmental problems had been generated. When asked if Knowlton was owned by Steven Lambert, Willoughby replied, "I guess."

{¶ 13} Based on the meager evidence presented to the BTA, competing inferences could be drawn as to whether the relationship between the buyer and the

4

seller qualified the sale as an arm's-length transaction. The burden was on Tanson to convince the BTA that the sale was an arm's-length transaction, and it was unable to meet that burden.

{¶ 14} In this case, the BTA as the trier of fact drew the inference that the relationship between the buyer and the seller was "far from independent." Whether such an inference drawn from the facts is reasonable is an appropriate question for our review. *Ace Steel Baling, Inc. v. Porterfield* (1969), 19 Ohio St.2d 137, 48 O.O.2d 169, 249 N.E.2d 892. We have reviewed the record and we find the BTA's inference to be reasonable.

{¶ 15} The decision of the BTA, being neither unreasonable nor unlawful, is therefore affirmed.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____