CONCURS IN PART AND DISSENTS IN PART, SAYING:
 INTRODUCTION {¶ 20} Seeking to reduce its costs, Mueller Electric Company outsourced part of its electrical clip assembly work to Circuit Solutions Inc., which had a facility in Mexico. When Mueller stopped placing orders with Circuit Solutions and moved its work to China, Circuit Solutions sued Mueller for breach of contract, promissory estoppel, and fraudulent *Page 12 
misrepresentation. Following a bench trial, the trial court concluded that Circuit Solutions had failed to establish its claims by clear and convincing evidence. Circuit Solutions appealed its breach of contract claim, and this Court reversed, concluding that the trial court had not applied the correct burden of proof. Circuit Solutions Inc. v. MuellerElec. Co., 9th Dist. No. 05CA008775, 2006-Ohio-4321, at ¶ 8. On remand, the trial court applied the correct burden of proof and concluded that Circuit Solutions had not established its breach of contract claim by a preponderance of the evidence. Circuit Solutions has again appealed, this time arguing that the trial court's decision on remand violated the law of the case and was against the manifest weight of the evidence. The majority has correctly overruled Circuit Solutions' second and third assignments of error because this Court's prior decision did not conclusively establish Circuit Solutions' breach of contract claim and because the trial court's decision of that claim was not against the manifest weight of the evidence. This Court should sustain Circuit Solutions' first assignment of error, however, because the trial court's decision regarding Circuit Solutions' tooling charges and under-billing claims was not supported by competent and credible evidence.
 FACTS {¶ 21} Mueller manufactured a variety of electrical clips in Cleveland, Ohio. Because of increased foreign competition, it sought to lower its costs by outsourcing its labor-intensive hand-assembly work. Mueller contacted Circuit Solutions, a contract manufacturer that it knew had production capabilities in Mexico. In April 2000, Circuit Solutions sent Mueller a quotation. Although Mueller did not accept Circuit Solutions' quotation, it did deliver some of its machines to Circuit Solutions and begin submitting purchase orders to it.
 {¶ 22} At first, Circuit Solutions assembled Mueller's electrical clips at its North Ridgeville, Ohio, facility. Mueller delivered unassembled parts to Circuit Solutions and Circuit *Page 13 
Solutions assembled the clips. Once Circuit Solutions learned how to assemble the clips efficiently, it transported Mueller's machines to its facility in Mexico and began assembling the clips there. Over time, Mueller outsourced additional stages of its production to Circuit Solutions. To accommodate Mueller's extra machinery, Circuit Solutions expanded its facility in Mexico. Representatives of Mueller visited Circuit Solutions' Mexican facility as it was expanding and approved the expansion.
 {¶ 23} Although the parties never signed a written agreement, they developed an understanding regarding Mueller's purchase orders. Mueller would issue a blanket purchase order for a number of clips over a specific period of time. As that order reached fulfillment, Mueller would issue a new purchase order, even if there were clips left to be assembled on the previous order. When Circuit Solutions received the new purchase order, it would set aside the old purchase order and begin using the new one. This ensured that Circuit Solutions never stopped assembling clips.
 {¶ 24} In the fall of 2001, Mueller stopped submitting purchase orders and stopped supplying unassembled parts to Circuit Solutions. Although production briefly resumed, Mueller soon began outsourcing its assembly work to a company in China. Circuit Solutions, therefore, had to close its Mexican facility.
 {¶ 25} Circuit Solutions sued Mueller for breach of contract, promissory estoppel, and fraudulent misrepresentation, seeking to recover its lost profits on all the purchase orders that Mueller replaced with new purchase orders before all of the clips called for on the replaced orders were assembled. The trial court, however, concluded that it had not proven its claims by clear and convincing evidence. Circuit Solutions appealed its breach of contract claim, and this Court reversed, concluding that the trial court had not applied the correct burden of proof. On *Page 14 
remand, the trial court concluded that Circuit Solutions had not proven breach of contract or its damages by a preponderance of the evidence. Circuit Solutions has appealed, assigning three errors.
 CANCELLED PURCHASE ORDERS {¶ 26} Circuit Solutions' second assignment of error is that the trial court ruled against the manifest weight of the evidence when it concluded that the purchase orders Mueller submitted to it did not constitute a contract between the parties. Circuit Solutions has argued that it submitted a quotation to Mueller to assemble clips on specific terms and conditions, that Mueller placed purchase orders with it in response to that quotation, that it partially filled those purchase orders, and that Mueller unilaterally cancelled the purchase orders without submitting a written cancellation as required under the quotation.
 {¶ 27} "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." Kostelnik v.Helper, 96 Ohio St. 3d 1, 2002-Ohio-2985, at ¶ 16 (quoting PerlmuterPrinting Co. v. Strome Inc., 436 F. Supp. 409, 414 (N.D. Ohio 1976)). "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." Id. (citing Episcopal RetirementHomes Inc. v. Ohio Dept. of Indus. Relations, 61 Ohio St. 3d 366, 369
(1991)).
 {¶ 28} In its judgment entry, the trial court wrote that it had "found, by a preponderance of the evidence that there was no contract between the parties." This was incorrect because it was undisputed that Mueller submitted purchase orders to Circuit Solutions and Circuit Solutions assembled clips based on those orders. Accordingly, there was at least an implied contract *Page 15 
between the parties. See Hollis Towing v. Greene, 155 Ohio App. 3d 300,2003-Ohio-5962, at ¶ 8 ("An implied contract is a contract inferred by a court from the circumstances surrounding the transaction, making a reasonable or necessary assumption that a contract exists between the parties by tacit understanding."). The trial court, however, later clarified its finding, writing that it found "by a preponderance of the evidence that there was no written contract between the parties." The trial court, therefore, concluded that the parties' course of conduct controlled the terms of their agreement.
 {¶ 29} Circuit Solutions has argued that, even though the parties did not have a written contract, the cancellation provision from the quotation it sent Mueller was incorporated into their agreement. The quotation that Circuit Solutions sent to Mueller in April 2000 provided that cancellations had to be in writing. It also contained an "exclusivity of terms" provision stating that "[b]uyer's purchase order will constitute an acceptance of the terms stated herein, irrespective of contrary terms in any Buyer's forms." Since Mueller submitted purchase orders to Circuit Solutions after receiving its quotation, Circuit Solutions has argued that the cancellation term became part of their agreement.
 {¶ 30} "Typically, a price quotation is considered an invitation for an offer, rather than an offer to form a binding contract . . . [A] buyer's purchase agreement submitted in response to a price quotation is usually deemed the offer." L.B. Trucking Co. Inc. v. C.J. Mahan Constr.Co., 10th Dist. No. 01AP-1240, 2002-Ohio-4394, at ¶ 39 (quoting DynoConstr. Co. v. McWane Inc., 198 F.3d 567, 572 (6th Cir. 1999)). A price quotation, however, "may be deemed an offer to form a binding contract if it is sufficiently detailed, and if it appears from the terms of the quotation that all that is needed to ripen the offer into a contract is the recipient's assent." SST Bearing Corp. v. MTD Consumers GroupInc., 1st Dist. No. C-040267, 2004-Ohio-6435, at ¶ 15. *Page 16 
"While the inclusion of a description of the product, price, quantity, and terms of payment may indicate that the price quotation is an offer rather than a mere invitation to negotiate, the determination of the issue depends primarily upon the intention of the person communicating the quotation as demonstrated by all of the surrounding facts and circumstances." Dyno Constr. Co., 198 F.3d at 572.
 {¶ 31} Even if Circuit Solutions' quotation constituted an offer, Mueller did not accept it. The quotation listed prices for assembly of twenty different kinds of clips, specifying quantities that ranged from five thousand to over five hundred thousand. There was no indication that Mueller could accept only part of the quotation; to the extent that Mueller wanted to assent to the quotation, it would have had to have accepted the price and quantity quoted for each clip. Mueller did not simply accept the quotation as it was; instead, it submitted a series of purchase orders in response to the quotation. Accordingly, it was Mueller's purchase orders, not Circuit Solutions' quotation, that formed the basis of the parties' agreement. Circuit Solutions accepted Mueller's purchase orders and began assembling clips under them, without obtaining Mueller's consent to the terms and conditions set forth in its quotation. Circuit Solutions' cancellation term, therefore, was not part of the parties' agreement.
 {¶ 32} Mueller's purchase orders did not include any terms regarding cancellation. Mueller's former purchasing manager testified that, when it sent Circuit Solutions a new purchase order, Circuit Solutions would close the previous order and begin working from the new one. An accounting assistant who worked at Circuit Solutions' Mexican facility agreed that, when she received a new purchase order from Mueller, she would begin using the numbers from the new order. Accordingly, there was competent and credible evidence in the record to support the trial court's conclusion that the cancellation term from Circuit Solution's quotation was not *Page 17 
incorporated into the parties' agreement and, therefore, that Mueller did not owe Circuit Solutions for the quantities remaining on its cancelled purchase orders.
 LAW OF THE CASE {¶ 33} Circuit Solutions has also argued that this Court "already determined that there was an agreement between the parties that related to the terms for cancellation of purchase orders." It has noted that, in this Court's previous decision, it wrote that, "[p]ursuant to the terms of the agreement, in order to cancel a purchase order [Mueller] needed to provide [Circuit Solutions] with written notice and [Circuit Solutions] had to accept the cancellation in writing to [Mueller]."Circuit Solutions Inc. v. Mueller Elec. Co., 9th Dist. No. 05CA008775,2006-Ohio-4321, at ¶ 11. This Court also wrote that, "[a]s the terms of the agreement and the parties' course of dealing were inconsistent with each other, the terms of the agreement govern." Id. at ¶ 12.
 {¶ 34} "Absent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." Nolan v. Nolan, 11 Ohio St. 3d 1, syllabus (1984). The "law of the case" doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Id. at 3. "[T]he doctrine functions to compel trial courts to follow the mandates of reviewing courts." Id. "Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." Id.
 {¶ 35} "[T]he law of the case is applicable to subsequent proceedings in the reviewing court as well as the trial court. Thus, the decision of an appellate court in a prior appeal will *Page 18 
ordinarily be followed in a later appeal in the same case and court."Id. at 4. The doctrine, however, "is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." Id. at 3.
 {¶ 36} In its original decision, the trial court found that "there was a meeting between the parties at which a proposed long-term contract was summarily rejected by [Mueller]." It found that "[a]n agreement about price for some work was later reached, and [Circuit Solutions] did work for [Mueller]." It also noted that "there was evidence of a course of conduct wherein the parties substituted new purchase orders for old ones." The trial court denied Circuit Solutions' claims because it "did not meet its burden of proof by clear and convincing evidence."
 {¶ 37} On appeal, this Court concluded that the trial court had not applied the correct burden of proof to Circuit Solutions' claims.Circuit Solutions Inc. v. Mueller Elec. Co., 9th Dist. No. 05CA008775,2006-Ohio-4321, at ¶ 8. This Court also concluded that, "when the terms of [an] agreement and the parties' course of dealing are contrary to one another, then the terms of the agreement govern." Id. at ¶ 10 (citing R.C. 1301.11(D)). This Court remanded the case "based on the trial court's incorrect application of the burden of proof and "based on the trial court's misapplication of the law" for "further proceedings consistent with this decision." Id. at ¶ 16-17.
 {¶ 38} On remand, the trial court reweighed the evidence, and found "by a preponderance of the evidence that there was no written contract between the parties." Because there was no written contract incorporating the cancellation terms from Circuit Solutions' quotation, the Court concluded that "the course of conduct of both parties in changing the terms of the prices of the product, the terms of the payment, and the amount of the product ordered is controlling." *Page 19 
 {¶ 39} The trial court's decision was not inconsistent with this Court's mandate. Although Circuit Solutions has argued that "[t]his Court has already determined that there was an agreement between the parties that related to the terms for cancellation of purchase orders," "courts serving in an appellate capacity . . . are not permitted to make factual findings or to determine the credibility of witnesses."Irvine v. State Unemployment Compensation Bd. of Review,19 Ohio St. 3d 15, 18 (1985). It was for the trial court to determine whether there was a contract between the parties and whether their agreement incorporated a cancellation term. The sentence from this Court's earlier opinion, relied upon by Circuit Solutions, was dicta. The trial court found that there was no written contract and that the parties' implied contract did not incorporate the cancellation term from Circuit Solutions' written quotation. It, therefore, concluded that Circuit Solutions had not proved its breach of contract claim by a preponderance of the evidence. That decision was not inconsistent with this Court's mandate and was not against the manifest weight of the evidence. The majority has correctly overruled Circuit Solutions' second assignment of error.
 UNPAID EXPENSES {¶ 40} Circuit Solutions' first assignment of error is that the trial court ruled against the manifest weight of the evidence when it concluded that Circuit Solutions could not recover for some expenses that Mueller did not pay. Circuit Solutions has argued that Mueller owes it for tooling charges and for assembly of some clips for which Circuit Solutions under-billed it. Circuit Solutions has noted that Mueller did not dispute the tooling charges at trial or present any evidence that it had paid the under-billed amounts.
 {¶ 41} In State v. Wilson, 113 Ohio St. 3d 382, 2007-Ohio-2202, at ¶ 24, the Ohio Supreme Court held that the test for whether a judgment is against the weight of the evidence in *Page 20 
civil cases is different from the test applicable in criminal cases. According to the Supreme Court in Wilson, the standard applicable in civil cases "was explained in C.E. Morris Co. v. Foley Constr. Co.,54 Ohio St.2d 279." Id. The "explanation" in C.E. Morris was that "judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."Id. (quoting C.E. Morris Co. v. Foley Constr. Co., 54 Ohio St. 2d 279, syllabus (1978)); but see Huntington Nat'l Bank v. Chappell, 9th Dist. No. 06CA008979, 2007-Ohio-4344, at ¶ 17-75 (Dickinson, J., concurring).
 {¶ 42} Circuit Solutions claimed that its price quotations for two products included separate tooling charges because it had to construct special fixtures at its facility before it could produce those products. Circuit Solutions' president testified that Mueller accepted its terms, but never paid the tooling charges. Circuit Solutions' president also testified that, when he reviewed the invoices his company had sent Mueller, he discovered that it had undercharged for one of its products. Circuit Solutions, therefore, sought to recover the tooling charges and the amount it claimed to have under-billed, for a total of $10,197.90.
 {¶ 43} Mueller has argued that it contested the alleged tooling charges at trial, but it has not cited, and I have not found, anything in the record that supports its argument. Mueller did not cross-examine Circuit Solutions' president about the unpaid tooling charges and under-billed amounts and did not introduce any evidence rebutting his testimony about those claims. While Mueller has argued that overhead charges are usually included in the per-unit cost of a product, it did not present any evidence supporting that argument at trial or tending to prove that that was done in this case. *Page 21 
 {¶ 44} The trial court determined that Circuit Solutions "did not meet its burden of proof on its claim as to breach of contract by a preponderance of the evidence" and that it "failed to meet its burden of proof . . . as to the damages also." Presumably, the trial court did not believe Circuit Solutions' president's testimony about the tooling charges and claimed under-billing. It has generally been recognized that a trier of fact is free to reject testimony even if that testimony is unrebutted. See Ace Steel Baling Inc. v. Porterfield,19 Ohio St. 2d 137, 138 (1969). Under the civil manifest-weight-of-the-evidence standard adopted in Wilson, however, this apparently is no longer true. See Huntington Nat'l Bank v. Chappell, 9th Dist. No. 06CA008979, 2007-Ohio-4344, at ¶ 51-54 (Dickinson, J., concurring). UnderWilson, if a finder of fact rejects unrebutted evidence presented by the party with the burden of proof, that rejection will result in a decision against the manifest weight of the evidence. Inasmuch as there was no evidence rebutting Circuit Solutions' tooling charges and under-billing claims, the trial court's decision regarding those claims could not have been supported by "competent, credible evidence." State v. Wilson,113 Ohio St. 3d 382, 2007-Ohio-2202, at ¶ 24 (quoting C.E. Morris Co.,54 Ohio St. 2d 279, syllabus (1978)). The trial court's denial of those claims, therefore, was against "the manifest weight of the evidence."Id. Circuit Solutions' first assignment of error should be sustained.
 PREVENTED PERFORMANCE {¶ 45} Circuit Solutions' third assignment of error is that the trial court ruled against the manifest weight of the evidence when it concluded that Circuit Solutions did not prove what its profits would have been on the replaced purchase orders. In this Court's prior decision, it concluded that the trial court should have applied the two-prong test set forth in Allen, Heaton McDonald Inc. v. Castle FarmAmusement Co., 151 Ohio St. 522 (1949). Under that test, Circuit Solutions had the burden of proving, "not only (a) what [it] would have received under the *Page 22 
contract from the performance so prevented, but also (b) what such performance would have cost." Id. at paragraph three of the syllabus.
 {¶ 46} The trial court concluded that, because there was no written contract between the parties, their course of conduct "in changing . . . the amount of the product ordered" controlled. The parties' course of conduct established that, when Mueller submitted a new purchase order, Circuit Solutions treated the previous order as cancelled or closed. Inasmuch as that finding was not against the manifest weight of the evidence, the trial court's conclusion that Circuit Solutions failed to prove that it was entitled to recover for prevented performance was also not against the manifest weight of the evidence. The majority has correctly overruled Circuit Solutions' third assignment of error.
 CONCLUSION {¶ 47} The trial court's decision was against the manifest weight of the evidence regarding Circuit Solutions' tooling charges and under-billing claims. Circuit Solutions' first assignment of error should be sustained. The trial court's decision was not against the manifest weight of the evidence and did not violate the law of the case regarding Circuit Solutions' lost profits claims. Circuit Solutions' second and third assignments of error are correctly overruled. The judgment of the Lorain County Common Pleas Court should be affirmed in part and reversed in part, and this matter should be remanded for a new trial on Circuit Solutions' alleged tooling charges and under-billing claims. *Page 1